THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GARY PAUL KARR, Defendant-Appellant.

Second District   No. 77-240

Opinion filed February 27, 1979.

William H. Wise, of Katz, Hirsch & Wise, of Chicago, for appellant.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Barbara A. Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was charged in Lake County with the offenses of rape, aggravated kidnapping and armed robbery. The defendant filed a suppression motion and a petition for discharge, both of which were denied. After a bench trial, the defendant was found not guilty of armed robbery, but guilty of rape and aggravated kidnapping. He was subsequently sentenced to a term of 30 to 50 years in the Department of Corrections. He appeals contending that (1) his sixth amendment right to counsel was violated when officers from the Highland Park Police Department questioned him after he had asserted his right to counsel; (2) that the statement which he gave to police was not given voluntarily, but instead was the result of the "repeated and prolonged nature" of the questioning; (3) that his constitutional right to a speedy trial was violated, and (4) that the sentence imposed by the trial court was excessive and improper.

The facts may be summarized as follows: On October 10, 1974, the complainant, a high school student, was abducted from a shopping center in Highland Park, Lake County, by a man armed with a shotgun who had concealed himself in the back seat of the complainant's car. The man forced the complainant to drive to a place where, by apparent pre-arrangement, they were joined by an accomplice. The two offenders then blindfolded the complainant and took her into a field, where each of the offenders raped her and one of the men took $16 out of her purse. The men drove the complainant back to her car and released her, telling her that they knew her address and that she had best not tell anyone about the incident. The complainant was subsequently able to identify Watson, the defendant's alleged accomplice, as one of the offenders, but was not able to identify the other offender.

On October 17, 1974, at 2:30 in the afternoon, the defendant was

asleep in his home in Lyons, Illinois, when six Lyons and Brookfield police officers entered the home, awoke the defendant, and arrested him for an armed robbery which occurred in McHenry County on October 16, 1974. At the hearing on the defendant's suppression motion, the defendant stated that he was denied permission to phone an attorney at the time of his arrest. Officer Johnson of the Brookfield Police Department, who was one of the arresting officers, testified that the defendant did not request counsel while he was present, but conceded that he was not in the room with the defendant during the entire time when the defendant was arrested. The defendant was advised of his rights and taken to the Lyons' police station, after his arrest.

At 5 p.m., Officers Macheroux and Eisele of the McHenry County Sheriff's Department arrived, advised the defendant of his constitutional rights and took him into custody. On the drive back to McHenry County, the defendant discussed the details of the McHenry County offense with the officers. Deputy Macheroux testified that the defendant never asked to call an attorney. The conversation was largely a narrative by the defendant, who told the officers where the gun and money from the McHenry County armed robbery could be found. They stopped and searched each location, finding the money from the armed robbery; the gun was found later, at the location described by the defendant. At 8:30 p.m., Macheroux, Eisele and the defendant arrived at the McHenry County jail.

At 9:20 p.m., the defendant was taken to "Rights Court" where a judge of the circuit court of McHenry County advised him of his rights. At or around this time, McHenry County State's Attorney Cowlin asked the defendant to make a statement regarding the McHenry County offense, but the defendant refused, explaining that he had once been "burned" by an Assistant State's Attorney, and that he would not speak to Cowlin without having counsel present. The defendant was then returned to jail.

At 10:10 p.m., Detective Macheroux told the defendant that two officers from Highland Park had arrived, and wished to talk to him about an investigation they were conducting. Macheroux told the defendant that another party had been identified by a photo lineup and indicated that the Highland Park officers thought that the defendant might have had something to do with the offense. Macheroux concluded by telling the defendant that, "* * * [i]t would be up to him if he wanted to talk to [the Highland Park officers]." The defendant responded that he would have no objection to seeing the officers.

The defendant was then introduced to Detective Highland of the Highland Park Police Department. Highland identified himself and administered *Miranda* warnings to the defendant. He then advised the

defendant that there had been a rape-abduction in Highland Park and described the victim (*i.e.*, the complainant in this case). This was the first time that the defendant had been questioned about the offense which led to his conviction in the case at bar. The defendant told Highland that he had just come from court and was familiar with his rights, and that he had not given a statement to the State's Attorney, because he had once been "burned" by a State's Attorney. The defendant then gave a statement admitting that he and Watson had abducted the complainant and raped her. According to Highland, the defendant's statement was a 15-minute narrative, rather than a response to questions put to the defendant. The only questions asked by Highland were the names of intersections and streets passed at various points during the perpetration of the offense.

At the suppression hearing and at trial, the defendant denied that he had given a confession to Highland, and contended that before talking to Highland, he had asked Macheroux that he be allowed to contact a lawyer, and Macheroux responded, "that it is not my responsibility"; this was denied by Macheroux. The defendant also claimed that he had talked to Highland on October 18, 1974, and not on the 17th, as Highland had stated. On the morning of the 18th, the defendant appeared in court on the McHenry County charges, and the public defender was appointed to represent him. After the defendant was returned to jail, Sergeant Tyrrell, of the McHenry County Sheriff's Department, was contacted by the Highland Park Police Department with a request that he ask the defendant "what happened to the blue Mustang automobile that was used in the Highland Park rape?" Sergeant Tyrrell advised the defendant of his rights, and then asked him about the automobile. The defendant responded that he had "dumped the car off" in a shopping center parking lot on the 7500 block of Western Avenue in Chicago. The Chicago police subsequently located the car in the shopping center parking lot; human blood, semen and spermatozoa were detected on portions of the interior of the car by the crime lab.

The defendant's primary argument is that his sixth amendment right to counsel was violated when he was questioned by Detective Highland and others, after he had asserted his right to counsel. In support, the defendant cites his own testimony that he repeatedly asked to be allowed to contact an attorney. For the most part, this was controverted by testimony of police officers who denied that the defendant had requested counsel. However, the State's proof did not exclude the possibility that the defendant had requested counsel at the time of his arrest, and the defendant's testimony that he refused to make a statement to State's Attorney Cowlin without having counsel present is not disputed.

It is notable that both of these occasions arose in the context of the defendant's arrest and detention on the McHenry County charges. The

issue thus presented, somewhat simplified, is whether the defendant's assertion of his right to counsel in the McHenry County matter meant that he could not subsequently be questioned by different officers about an unrelated offense, without first consulting with counsel.

■■■ The defendant points to language in *Miranda* which is phrased in the absolute: "If the individual states that he wants an attorney, *the interrogation must cease until an attorney is present.*" (Emphasis added.) (*Miranda v. Arizona* (1966), 384 U.S. 436, 474, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1628.) Was this rule violated when Highland questioned the defendant? *Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321, provides some guidance, although that case involved the right to terminate questioning, rather than the right to counsel. However, as with the right to consult with an attorney, the *Miranda* decision phrased the effect of a defendant's right to cut off questioning in absolute terms: " ' * * * If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, *the interrogation must cease. * * *'* " (Emphasis added.) (*Michigan v. Mosley* (1975), 423 U.S. 96, 100, 46 L. Ed. 2d 313, 319, 96 S. Ct. 321, 325.) The defendant in *Mosley* had been arrested in connection with certain robberies. After being advised of his rights under *Miranda*, the defendant refused to make a statement and the interrogation about the robbery ceased. Two hours later the defendant was questioned by a different officer about an unrelated homicide and confessed. The court held that an assertion of the right to terminate questioning did not grant a "permanent immunity from further interrogation, regardless of the circumstances" which "would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." (*Michigan v. Mosley* (1975), 423 U.S. 96, 102, 46 L. Ed. 2d 313, 320, 96 S. Ct. 321, 326.) The court went on to hold that the questioning of the defendant about an unrelated homicide "was quite consistent with a reasonable interpretation of Mosley's earlier refusal to answer any questions about the robberies." (423 U.S. 96, 105, 46 L. Ed. 2d 313, 322, 96 S. Ct. 321, 327.) In *Mosley,* as in this case, the defendant declined to make a statement about the offense for which he had been arrested, and after an interval of time, after again being advised of his rights, the defendant voluntarily answered questions put to him by different officers about a wholly unrelated offense. The reasoning which led the court in *Mosley* to reject any holding that a defendant who has invoked his right to silence "can never again be subjected to custodial interrogation by any police officer at any time or place *on any subject*" (emphasis added) (423 U.S. 96, 102, 46 L. Ed. 2d 313, 320, 96 S. Ct. 321, 325), would seem to be applicable to a case wherein the defendant refuses to make a statement

without the presence of counsel, but subsequently waives his right to the presence of counsel during questioning about an unrelated offense.

*People v. White* (1975), 61 Ill. 2d 288, *cert. denied* (1976), 424 U.S. 970, 47 L. Ed. 2d 738, 96 S. Ct. 1469, lends more direct support to the view that the defendant's request for counsel, following his arrest, will not in every case render a subsequent interrogation of the defendant about an unrelated offense unlawful, even where the defendant has not consulted with a lawyer prior to the second interrogation. (*Cf. People v. Medina* (1978), 71 Ill. 2d 254, 262.) In *White*, the defendant was arrested for an unrelated offense on May 24, 1969, and at that time the defendant told the police that he would prefer to speak to an attorney before talking to them. He was questioned about other offenses that afternoon and the next day and gave a confession to another incident. On May 26, 1969, he was questioned for the first time about the murder that was the basis for the conviction which the defendant was appealing. Prior to each interrogation the defendant was advised of his rights. At the conclusion of the interrogation on May 26, 1969, the defendant confessed to the murder. On appeal, the Supreme Court of Illinois held that the defendant's confession was properly admitted into evidence and affirmed the defendant's conviction. Obviously, in reaching this result, the court rejected any holding that all interrogations of a defendant on any subject whatsoever after he has requested counsel are *per se* unlawful, and that any statement so obtained is inadmissible. Instead, *White* indicates that under some circumstances a court may find that a defendant who asserted his right to the presence of counsel in the course of questioning regarding the offense for which he was arrested, made a valid waiver of his right to the presence of counsel prior to subsequent interrogation concerning an unrelated offense. See also *People v. Sanders* (1977), 55 Ill. App. 3d 178.

■■ Was there a valid waiver in this case? The defendant had been repeatedly advised of his rights, prior to talking to Officer Highland, and Highland commenced the interview by again advising him of his rights. The total period of interrogation was not as prolonged as that in *White*, and as in *White*, the defendant here was interrogated separately as to each offense. Unlike *White*, in this case there was no evidence that the defendant had a low I.Q. or subnormal intelligence. Prior to being introduced to Officer Highland, Highland's reason for wanting to talk to the defendant was explained. The matter of whether or not the defendant would even deign to talk to Highland was left entirely to the defendant's discretion. Similarly, on the next day, Sergeant Tyrrell advised the defendant of his rights prior to asking about the car used during the offense; Tyrrell's interview with the defendant lasted only a few minutes and there is no evidence of any inducement or pressure placed upon the defendant to answer Tyrrell's question. The defendant never requested

the presence of counsel as to questioning about the Lake County offenses, and his refusal to give a statement to McHenry County State's Attorney Cowlin related only to the McHenry County charges, since the offense in Lake County was not then at issue. Under these circumstances, we find that the defendant effectively waived his right to have counsel present during questioning about the Lake County offenses.

A related question is whether the record demonstrates that the defendant's confession was voluntary. The defendant contends that the statement which he gave Highland was not voluntary, but was instead the result of "close to eight hours of intense and persistent interrogation," coupled with the deprivation of his right to counsel. The record does not support this contention. Compare *In re Lamb* (1975), 61 Ill. 2d 383, *cert. denied* (1976), 425 U.S. 938, 48 L. Ed. 2d 180, 96 S. Ct. 1672.

Next, the defendant argues that his constitutional right to a speedy trial was violated when the State failed to bring him to trial within 120 days of his incarceration, as required by section 103—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 103—5(a)). As the State notes in its brief, the statutory term of 120 days and the period of time which meets the constitutional requirement of a speedy trial are not co-extensive. (*People v. Dodd* (1974), 58 Ill. 2d 53, 57.) In any event, we find that there was no violation either of the defendant's right to a speedy trial or of the statutory 120-day term.

As noted above, the defendant was arrested on the McHenry County charges on October 17, 1974. Between that date and June 2, 1975, the defendant was in the custody of the sheriffs of McHenry and Kane Counties. On or about October 23, 1974, the defendant was given a photo copy of a criminal complaint and warrant which had been issued on the Lake County charges. On April 21, 1975, the defendant pleaded guilty to armed robbery in McHenry County, pursuant to a negotiated plea, and on May 29, 1975, he pleaded guilty to armed robbery before the circuit court of Kane County. The defendant was sentenced on the Kane County charges on May 29, 1975. On June 2, 1975, custody of the defendant was transferred to the sheriff of Lake County. On June 4, 1975, the defendant's trial on the Lake County charges, which are at issue here, was set for June 16, 1975. On that date, the defendant appeared and moved for a continuance, which was granted and the case was set for a status call. The matter was subsequently set for hearings on various defense motions and finally went to trial on February 9, 1976. On these facts, the defendant contends that his incarceration in McHenry County "started the speedy trial term running for Lake County proceedings," since the defendant was "served with legal process" on October 23, 1974, and was held in the "constructive custody" of Lake County authorities from that date until his trial.

We cannot agree. As the court observed in *People v. Clark* (1968), 104 Ill. App. 2d 12, 20:

> "Where, as here, a defendant is in custody awaiting trial in one county and there is a charge pending against him in another county, we believe he cannot be deemed to be in custody for the latter offense until such time as the proceedings against him in the first county are terminated and he is then either returned to, or held in custody for, the second county. Any other construction would embarrass and harass the effective administration of criminal justice * * *."

(See also *People v. Archie* (1971), 1 Ill. App. 3d 981.) We concur in this view and do not believe that the fact that the defendant was given an informal copy of the Lake County complaint and warrant requires a different result. Under the circumstances of this case, there was no violation, either of the statutory 120-day term or of the defendant's constitutional right to a speedy trial.

The final points raised by the defendant concern the validity of his sentence. He first argues that his sentence was excessive. In view of the premeditated and brutal nature of the offense, perpetrated against a teenage girl, and the defendant's record, we find that the sentence imposed by the trial court was highly appropriate. In any event where, as here, the trial judge has not abused his discretion in imposing sentence, the sentence imposed cannot be altered by a review court. (*People v. Perruquet* (1977), 68 Ill. 2d 149.) The defendant has also argued that it was improper in this case for the judge to sentence the defendant to a term to be served concurrently with the defendant's sentence of 7 to 21 years for armed robbery in McHenry County, 7 to 21 years for armed robbery in Kane County and 5 years for armed robbery in Rock County, Wisconsin, since this resulted in a higher minimum sentence than the defendant could have received had he been sentenced to a consecutive term under sections 5—8—4(b) and (c) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, pars. 1005—8—4(b) and 1005—8—4(c)). However, section 5—8—4(a) states that "* * * the sentences shall run concurrently or consecutively as determined by the court" and we find no error in the imposition of a concurrent term in this case.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

SEIDENFELD and WOODWARD, JJ., concur.