THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KEVIN EUGENE WOODRUFF, Defendant-Appellant.

Fourth District    No. 16034

Opinion filed November 14, 1980.

Daniel D. Yuhas and Charles M. Schiedel, both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Jeff Justice, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The defendant, 15 years old when he committed the offenses alleged in this case but tried as an adult, appeals from convictions for armed robbery and home invasion (Ill. Rev. Stat. 1979, ch. 38, pars. 18—2, 12—11); he received two concurrent 7-year sentences of imprisonment. The defendant raises three issues on appeal—whether he should have been discharged under the speedy-trial provisions (Ill. Rev. Stat. 1979, ch. 38, par. 103—5); whether the jury should have received a cautionary instruction regarding an accomplice's testimony; and whether the prosecution of him as an adult was proper—but we need discuss only the first question. We hold that section 103—5(a) (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(a)) requires the defendant's discharge and relates back to include the time before his case was transferred to the adult docket.

The defendant was declared a delinquent minor during 1978 for an offense unrelated to this prosecution and placed under supervision for one year. At an adjudicatory hearing held June 14 (or 15), 1979, the defendant admitted several violations of the terms of his supervision and was declared a ward of the court, to remain in detention pending a dispositional hearing. Before the dispositional hearing, however, the defendant was charged with the offenses involved in this cause. On June 25, 1979, a petition was filed to declare the defendant a delinquent minor on charges of armed robbery, home invasion, and armed violence, offenses allegedly occurring May 29, 1979, and to remove the cause to adult docket. A summons, stamped "Impounded Juvenile," was issued that same day.

The dispositional hearing to determine the appropriate sanctions for the defendant's violations of his supervision was held June 26, 1979. The defendant was ordered committed to the Department of Corrections, Juvenile Division, and placed in a juvenile detention center in Macon County pending the transfer of custody.

On June 28, 1979, the defendant was served with the summons for these offenses. A Macon County deputy sheriff delivered the defendant to the juvenile division, St. Charles, July 2, 1979. The State's petition for a

writ of *habeas corpus ad prosequendum* was granted July 23, 1979, and served on the defendant three days later in St. Charles.

The State's motion to try the defendant as an adult was heard August 2, 1979; the trial court granted the motion August 10, 1979. The State then indicted the defendant as an adult August 30, 1979, for armed robbery, home invasion, and armed violence.

The defendant's trial began November 19, 1979, 119 days after July 23, with the court first hearing arguments on the defendant's motion for discharge. The parties *stipulated that the defendant was in custody beginning June 28, 1979.* The trial court denied the motion for discharge, finding that the defendant was not in custody for this offense until July 23, 1979, when the State filed its writ of *habeas corpus ad prosequendum.*

## I.

■■ The relevant portions of section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 103—5) provide:

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody * * * .

(b) Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial * * * .

    * * *

(d) Every person not tried in accordance with subsections (a), (b) * * * of the Section shall be discharged from custody or released from the obligations of his bail or recognizance.

(e) If a person is simultaneously in custody upon more than one charge pending against him in the same county, or simultaneously demands trial upon more than one charge pending against him in the same county * * * ."

For purposes of section 103—5(a), the State would begin the period of custody July 23, when it filed the writ, or August 10, when the trial court granted the motion to try the defendant as an adult. Even if the earlier date is used, section 103—5(a) would not compel discharge of the defendant, for only 119 days elapsed between July 23 and November 19, when the trial began; the periods are computed by skipping the day when custody begins and including the day when trial begins. *People v. Solheim* (1977), 54 Ill. App. 3d 379, 369 N.E.2d 308.

As the chronology of events in this case shows, the defendant was already in custody when charged as a juvenile with the offenses involved here. The courts have interpreted the beginning of section 103—5(a)—"Every person in custody in this State for an alleged

offense"—to refer to custody of a defendant for the particular offense for which the defendant later seeks discharge under that section. (*People v. Burchfield* (1978), 62 Ill. App. 3d 754, 379 N.E.2d 375.) In *People v. Chaney* (1977), 48 Ill. App. 3d 775, 362 N.E.2d 1375, we held that for a defendant already incarcerated and with unrelated charges against him pending, the applicable speedy-trial period—whether under section 103—5(a) or section 3—8—10 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1003—8—10)—begins with the date of indictment for the new offense. Filing the delinquency petition and serving the summons effectively began this case. *People v. Nichols* (1978), 60 Ill. App. 3d 919, 377 N.E.2d 815, held that the applicable speedy-trial period begins to run when charges are brought against a defendant, whether by arrest, indictment, or complaint. *Nichols* cites *Dillingham v. United States* (1975), 423 U.S. 64, 46 L. Ed. 2d 205, 96 S. Ct. 303 (*per curiam*), where the Supreme Court ruled that for speedy-trial claims predicated on the sixth amendment, arrest triggers the constitutional protection, thus allowing inclusion of the period between arrest and indictment or information in assessing the merits of a defendant's argument that prosecution has proceeded too slowly. If section 103—5(a) relates back, then it compels the defendant's discharge.

This case is not governed by the rules applicable when a defendant is in custody and awaiting trial in one county and charges are then entered against him in another county; in that situation the 120-day period for the latter charges does not begin running until the proceedings in the first county end and the defendant is held in custody by or for the second county. *People v. Evans* (1979), 75 Ill. App. 3d 949, 394 N.E.2d 710; *People v. Kerley* (1979), 72 Ill. App. 3d 916, 391 N.E.2d 225; *People v. Karr* (1979), 68 Ill. App. 3d 1040, 386 N.E.2d 927.

Thus, the pendency of more than one set of charges rather than the involvement of more than one county determines the interpretation to give section 103—5(a). This rule is borne out by a situation resembling the one here: When a defendant is confined in one county, following conviction, and charges against him are pending in another county, prosecutorial action of some sort, variously viewed as indictment, post-indictment arraignment, or the issuance of a detainer warrant, will begin the speedy-trial period. *People v. Smith* (1976), 42 Ill. App. 3d 731, 356 N.E.2d 656 (*dicta*); see *People v. Arbuckle* (1964), 31 Ill. 2d 163, 201 N.E.2d 102, *cert. denied* (1965), 380 U.S. 945, 13 L. Ed. 2d 964, 85 S. Ct. 1029.

Nor does section 103—5(e) apply here; it pertains to defendants being held and awaiting trial on independent charges brought against them in one county. (*People v. Toolate* (1977), 48 Ill. App. 3d 1038, 363 N.E.2d

640.) The State need try the defendant within 120 days on only one charge or set of charges. In this case only one set of charges was pending against the defendant.

## II.

■■ The next question raised is whether the speedy-trial rules applicable to adult defendants apply or relate back to periods during which a defendant was being held as a juvenile. Without the transfer of the case to the adult docket those rules would not apply (Ill. Rev. Stat. 1979, ch. 37, par. 702—7(1)); the case would be governed by the provisions of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 701—1 *et seq.*). We hold here that the period of time preceding a minor's transfer to the adult docket ought to be included in computing the applicable speedy-trial period governing his case as an adult.

We find support for this conclusion in *People v. Eckmann* (1978), 60 Ill. App. 3d 300, 376 N.E.2d 751, which held that a minor's objection to transfer to the adult docket does not suspend the 120-day period of section 103—5(a), thus implying that that section relates back to the period before the defendant's case is transferred. In *Eckmann,* one circuit judge had refused to discharge the defendant under section 103—5(a); following the defendant's conviction, the trial judge then discharged the defendant. The appellate court reversed the discharge, finding that no new evidence had been presented at post-trial to justify the trial judge's review of the pretrial ruling on the motion for discharge. The appellate court then discussed the merits of the first circuit judge's decision, concluding that a 9-day continuance sought by defense counsel was delay chargeable to the defendant, suspending the 120-day period. The State's argument here that this latter holding was merely an alternative basis for the decision, and in that guise *dictum,* misinterprets the structure of the case. The court in *Eckmann* said that the first judge's denial of the discharge was before it "on the merits upon defendant's cross-appeal" (60 Ill. App. 3d 300, 303, 376 N.E.2d 751, 753). The State here mischaracterizes the treatment of the merits in *Eckmann* as an assumption favorable to the defendant in that case; to assess the merits *Eckmann* had to consider the applicability of section 103—5(a) to the defendant's status as a minor before his transfer to the adult docket. To be sure, *Eckmann* only implies that the speedy-trial rules relate back. The link between chapters 37 and 38 goes unilluminated.

Although our result here is based on statutory rather than constitutional grounds, we note that the courts have changed their perception of juvenile proceedings, finding several significant criminal constitutional rights applicable to delinquency actions. The quasi-criminal nature of juvenile proceedings is now widely accepted; the cases have discredited

the notion that juvenile courts serve a distinctly civil function. (*In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068; *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428; *In re Urbasek* (1967), 38 Ill. 2d 535, 232 N.E.2d 716.) Relating back the speedy-trial period to the time preceding a minor's transfer to the adult docket does not destroy the remaining useful distinctions between juvenile delinquents and criminal defendants.

Furthermore, section 1—2(3)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 701—2(3)(a)) says: "The procedural rights assured to the minor shall be the rights of adults unless specifically precluded by laws which enhance the protection of such minors." This section does not require courts to apply to adjudications of delinquency certain rights afforded criminal defendants if those rights are not congruent with the practices of the Juvenile Court Act. *In re Beasley* (1977), 66 Ill. 2d 385, 362 N.E.2d 1024, *cert. denied* (1978), 434 U.S. 1016, 54 L. Ed. 2d 761, 98 S. Ct. 734, in finding Supreme Court Rule 402 (73 Ill. 2d R. 402) inapplicable to juvenile proceedings, said that section 1—2(3) (a) of the Juvenile Court Act did not require the use of that rule. We are not holding that section 1—2(3) (a) of the Juvenile Court Act requires the application of the speedy-trial rules to persons charged and tried as juveniles; that question is not involved here. But section 1—2(3) (a) of the Juvenile Court Act expresses the intention to grant minors no fewer rights than they would enjoy if tried as adults and, in certain cases, to afford them added protection. This salutary goal would be thwarted if the period of time during which the defendant was still regarded as a minor for purposes of criminal prosecution were not included in computing the speedy-trial period applicable to his later prosecution as an adult. Excluding the time before the case was transferred to the adult docket would anomalously lengthen the permissible time before trial as an adult.

Section 4—2 of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 704—2) appears to be the juvenile analogue of the adult speedy-trial rule, yet has not been interpreted that way. Section 4—2 sets the date for an adjudicatory hearing:

> "When a petition has been filed alleging that the minor is [a delinquent or otherwise needs supervision], it shall be set for an adjudicatory hearing within 30 days. In the case of a minor ordered held in detention or shelter care, however, the petition must be set for hearing within 10 judicial days from the date of the order of the court directing detention or shelter care or the earliest possible date [under the summons and notice provisions of the Juvenile Court Act]."

This is not a speedy-trial rule for minors; even when the adjudicatory hearing is held more than 30 days after the filing of the petition, the

supreme court has held that the delay does not require the minor's discharge and does not deprive the juvenile court of jurisdiction. *In re Armour* (1974), 59 Ill. 2d 102, 319 N.E.2d 496; *In re Sparrow* (1978), 59 Ill. App. 3d 731, 376 N.E.2d 236; *In re Daniels* (1976), 37 Ill. App. 3d 975, 347 N.E.2d 479.

Furthermore, relating back the speedy-trial provisions to the defendant's former status as a minor does not improperly bridge two jurisdictionally distinct courts, for the juvenile courts do not have an independent grant of jurisdiction.

> "The juvenile court is merely a branch of the circuit court and it is the circuit court, as a whole, which is vested with jurisdiction. Whether a person is to be tried in juvenile or criminal court is a matter of procedure." *Nichols*, 60 Ill. App. 3d 919, 922, 377 N.E.2d 815, 818.

### III.

Section 3—8—10 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1003—8—10) does not govern this case. Section 3—8—10 applies to defendants already committed to the Department of Corrections and incorporates the more relaxed rules of section 103—5(b) and (e) that the defendant be tried within 160 days following his demand for a trial. If this section were applicable, the defendant would not be entitled to discharge, for he did not demand a trial and fewer than 160 days passed between the filing of the juvenile petition and the trial. Yet the Department of Corrections did not obtain physical custody of the defendant until several days after the juvenile petition had been filed and the defendant served with the summons naming the charges involved here. In *People v. Griffith* (1975), 26 Ill. App. 3d 405, 325 N.E.2d 392, this court held that a person is "committed," as the word appears in section 5—8—4(f) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(f)), when he is in custody of, confined, or held by the Department of Corrections; we adopt the same definition for interpreting section 3—8—10. Thus, because the defendant was not officially committed to the Department until July 2, after the speedy-trial period began, section 103—5(a) rather than section 3—8—10 applies to this case.

We reverse the convictions for armed robbery and home invasion and order that the defendant be discharged from custody (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(d)).

Reversed. Defendant discharged.

MILLS, P. J., and GREEN, J., concur.