59 Ill. App.3d 731 (1978)
376 N.E.2d 236
In re HATTIE SPARROW et al., Minors.  (THE PEOPLE ex rel. DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Petitioner-Appellee,
v.
VIRGIL WARREN SPARROW et al., Respondents-Appellants.)
No. 76-110.
Illinois Appellate Court  Fifth District.
Opinion filed March 23, 1978.
Supplemental opinion filed on denial of rehearing May 31, 1978.
*732 *733 Michael Bastian, of Legal Aid Society of the City & County of St. Louis, for appellants.
William J. Scott, Attorney General, of Springfield (Joseph R. Hale, Assistant Attorney General, of counsel), for appellee.
Judgment affirmed.
Mr. JUSTICE JONES delivered the opinion of the court:
Respondents-appellants, Virgil and Linda Sparrow, herein referred to as the parents, appeal from an order finding them to be unfit parents and awarding guardianship of their six minor children to the Illinois Department of Children and Family Services with authority to consent to their adoption.
Two petitions were filed on May 28, 1975, by the Illinois Department of Children and Family Services, herein referred to as the Department, invoking provisions of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 701-1 et seq.). One concerned the five children of Virgil and Linda Sparrow, ranging in age from infant to seven years, and the second concerned the child of Linda Sparrow and one John Qualls, a daughter aged nine years. The petitions contained the following allegations:
"The minors are neglected by reason of the following facts: Their environment is injurious to their welfare in that the mother is again hospitalized for drug abuse and the father has repeatedly exhibited an inability to care for the named children and both parents appear unfit persons to care for the named children because of their failure to maintain a reasonable degree of interest, concern and responsibility as to the children's welfare and further their substantial neglect has been repeated."
The petitions contained a prayer that the Department be appointed guardian with authority to consent to adoption as well as authority to consent to medical and surgical treatment.
A detention hearing was held May 28, 1975 pursuant to section 3-6 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 703-6). At that hearing the petitions were consolidated. Virgil Sparrow was present and requested a postponement until he could obtain an attorney. The court denied his request, advising him that the detention hearing was a temporary matter and that he would have the right to contest it when he obtained a lawyer. It appears from the record that Linda Sparrow was a *734 patient at the Anna State Hospital at the time of this hearing. During the hearing the State's Attorney stated that Mr. Sparrow had just informed him that the natural father of the oldest child was one John Qualls and that Qualls was deceased.
A social worker for the Department and Mr. Sparrow testified. At the close of the testimony the court placed the children in the temporary custody of the Department and the matter was set for an adjudicatory hearing on June 19, 1975.
Subsequent to the detention hearing an attorney was appointed and entered an appearance on behalf of Linda Sparrow and a guardian ad litem was appointed for the minor children. Attorneys entered appearances for the Department and Mr. Sparrow was represented by counsel from the Legal Aid Society of the City and County of St. Louis.
The adjudicatory hearing was continued from June 19, 1975, and finally commenced on July 16, 1975. The hearing lasted three days. All parties were represented by counsel. Virgil Sparrow was personally present throughout the hearing and Linda Sparrow was personally present the first day. Thirteen witnesses testified. Witnesses were presented by the Department and by Mr. Sparrow. All attorneys for the respective parties cross-examined the witnesses at various times. The attorney for Linda Sparrow requested the court to receive into evidence documents pertaining to her involuntary commitment to Anna State Hospital. Following the hearing the court entered an order in which it found the children to be neglected and dependent and made them wards of the court. Temporary custody was continued in the Department with rights of visitation in the parents. The dispositional hearing was set for September 8, 1975, but later continued to January 28, 1976.
All attorneys for the parties were present at the dispositional hearing. Both the Sparrows were present. Eight witnesses were called to testify, including two foster parents with which certain of the children were living following placement by the Department. The Sparrows also testified. A predispositional report which the court had ordered prepared was the subject of discussion between the court and counsel. The attorney for Mr. Sparrow objected to the report but did not move to strike it. The court replied that no one had requested that the report be admitted into evidence. The court also remarked at this point that any incompetent evidence would not be considered in passing upon the merits of the case. The court then ruled that the Sparrows were unfit and improper persons to have custody of the children and ordered custody to remain in the Department. The court also granted the Department authority to consent to the adoption of the children and terminated the parental rights of Virgil and Linda Sparrow pursuant to section 5-9 of the Act (Ill. Rev. Stat. 1973, ch. 37, par. 705-9).
On this appeal the parents, under the rubric of "denial of a fair trial," *735 address multiple issues. They first assert that none of the parents received adequate notice of the petitions or the hearing thereon. Linda Sparrow is the mother of all six children. Virgil Sparrow is the father of all of the children except the oldest, whose natural father was alleged to be one John Qualls. The parents assert that neither they nor John Qualls were ever served with summons.
 1, 2 It is true that there is no return of summons endorsed to show personal service shown in the record. Notwithstanding, we think the record adequately shows that the court had jurisdiction of the persons of the parents. There is a record sheet entry showing that summons was served on the Sparrows return made thereon. Virgil Sparrow volunteered information in open court during the detention hearing as to the name of the eldest child's natural father and the fact that he was deceased. He cannot now be heard to complain that the information he provided to the court was wrong. Most importantly, however, both Virgil and Linda Sparrow appeared by their attorneys at both the adjudicatory and dispositional hearings and Virgil Sparrow appeared personally at all three hearings. Linda Sparrow appeared personally for one day of the adjudicatory hearing and at the dispositional hearing. These actions constitute a general appearance and waiver of process even had summons not been served and returned. (People ex rel. Houghland v. Leonard, 415 Ill. 135, 112 N.E.2d 697.) We note, too, that the Sparrows did not seek to invoke section 3-6(3) of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 703-6(3)) which would have obtained for them a rehearing de novo of the detention hearing by the simple expedient of filing an affidavit stating that either or both of them had received no notice of that hearing.
 3 Next, the parents contend that they were denied a timely hearing, and the court lost jurisdiction to proceed, in that there was no compliance with the provisions of section 4-2 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 704-2). That section provides in pertinent part that:
"When a petition has been filed alleging that the minor is a person described in Section 2-4 or 2-5, it shall be set for adjudicatory hearing within 30 days and acted upon within 90 days."
However, a review of the record indicates that there was compliance with this section. The petition was filed May 28, 1975, and the detention hearing held. On that date the court set the adjudicatory hearing for June 19, 1975, well within the 30-day period. The adjudicatory hearing was continued and did not commence until July 16, 1975, and was concluded on July 18, 1975, a time well within the 90-day period required by the statute.
However, the parents argue that this is too literal a reading of the *736 statute. They point out that 246 days elapsed between the date the petitions were filed, May 27, 1975, and the date of convening of the dispositional hearing in which parental rights were terminated, January 28, 1976. The parents cite In re Armour, 59 Ill.2d 102, 104, 319 N.E.2d 496, 498, which held that it was not reversible error to set a case for adjudicatory hearing 32 days after the filing of a petition. They contend the case is distinguished by the fact that it was concerned with a delay of but two days while the delay here was 216 days beyond the statutory deadline.
We must disagree with the appellants' attempt to distinguish the application of Armour to this case. In Armour the court stated:
"That the legislature used the word `shall' in providing for the setting of a hearing within 30 days will not require an interpretation that the provision is mandatory and not directory. In Cooper v. Hindrichs, 10 Ill.2d 269, 272, this court said: `The terms of the statute do not themselves indicate unequivocally whether the statute is mandatory or discretionary in character. The word "shall" appearing therein does not have an exclusive, fixed or inviolate connotation, and has been construed as meaning both "must" and "may," depending upon the legislative intent.'" (59 Ill.2d 102, 104.)
The Armour court concluded that the failure to schedule a hearing on the petitions within 30 days from the date of their filing did not deprive the court of its jurisdiction to proceed with a determination of the merits of the case. This same conclusion must be applicable here. This is especially so since we must be primarily concerned with the best welfare of the children involved rather than a strict compliance with procedural steps utilized to present the case for adjudication. We believe this result is further prompted by In re Nyce, 131 Ill. App.2d 481, 268 N.E.2d 233, where it was held that the failure to comply with section 4-2 of the Act did not deprive the court of jurisdiction, the result being premised on the court's concern with the welfare of the child is contradistinction to procedural safeguards to be accorded minors whose cases might have an outcome similar to a criminal proceeding. See also People v. Dean, 52 Ill. App.3d 383, 367 N.E.2d 419, where this court followed In re Daniels, 37 Ill. App.3d 975, 347 N.E.2d 479, in holding that a violation of section 5-3(4) of the Juvenile Court Act did not deprive the court of jurisdiction to proceed with a hearing on the petition. Both Dean and Daniels relied on In re Armour.
 4 The appellants next assert that the trial court was without jurisdiction in that, contrary to section 1-21 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 701-21), the case was not prosecuted by the State's Attorney of Union County. The case for the State was presented *737 by a senior law student working under the authority of a license to practice authorized by Supreme Court Rule 711 (Ill. Rev. Stat. 1973, ch. 110A, par. 711) and employed by the Department.
The answer to this contention is that at the time the State's Attorney presented this individual to the court and inquired if there were any objection to having him present the case on behalf of the State, the attorney for the parents replied "no objection." Any objection was accordingly waived. Those cases appellants cite as authority for the proposition that the appearance of private counsel in child neglect proceedings is reversible error deal with situations where the concerns of private individuals were sought to be advanced by the institution of judicial proceedings under the color of State authority. Such is not the situation in the instant case.
 5 The parents also allege that erroneous procedures were followed in terminating the parental rights of Linda Sparrow the mother of the children. They cite a provision of the Adoption Act, section 8(e) (Ill. Rev. Stat. 1973, ch. 4, par. 9.1-8(e)), which recites that:
"If the court finds that either parent of the child sought to be adopted has been adjudicated an incompetent by reason of mental impairment, or adjudicated mentally ill, in need of mental treatment, or mentally retarded, and if the court further finds from the evidence by 2 qualified physicians selected by the court that such parent continues to be mentally ill, in need of mental treatment or mentally retarded, and will not recover from such mental illness or mental retardation in the foreseeable future, then the court may on its own motion, or on the application of the petitioners, appoint the State's Attorney * * * or some other licensed attorney as guardian ad litem, to represent such parent * * * in the adoption proceedings, and he shall have authority to consent to the adoption."
The parents contend that the fact that evidence was made a part of the record in the adjudicatory hearing that Linda Sparrow had been adjudged in need of mental treatment and involuntarily committed to the Anna State Hospital makes the above described procedure for terminating her parental rights obligatory.
We recognize that this statute provides a method by which the children of the mentally ill or mentally retarded who are not susceptible to treatment may be adopted. However, we see no justification for the parents to contend that these provisions from the Adoption Act were mandatory and jurisdictional in the instant case. Linda Sparrow's involuntary commitment was changed to voluntary status by the time of the dispositional hearing. No effort was made to deprive the mother of any of her parental rights in these proceedings based solely on her need *738 for mental treatment and her confinement in the Anna State Hospital. She was represented by counsel at both the adjudicatory and the dispositional hearings. She was present for one day of the adjudicatory hearing and for the entirety of the dispositional hearing. The procedure described in section 8(e) would have been an acceptable method of terminating Linda Sparrow's parental rights if her situation had come within the purview of that statute. This case is not, however, a proceeding under the Adoption Act and its provisions are not relevant here, especially where Linda Sparrow was accorded the procedural safeguards above mentioned.
 6 The appellants also complain of certain evidentiary rulings as being prejudicial and depriving them of a fair trial. They allege that the court permitted opinion evidence by those unqualified to give it. The instances cited relate to an opinion by a social worker for the Department as to "what action was needed by the agency" during home visits, and an opinion by a registered nurse with the county health department as to whether, to her knowledge, a cure had been found for psoriasis. We do not agree with the appellants as to the incompetency of these witnesses to testify to these matters. Their opinions were given on matters well within their area of expertise. Moreover, the reply of the nurse was limited to "It looked as though he [Mr. Sparrow] needed help."
 7 The appellants assert that evidence was admitted as to the condition of the homes the children lived in some two years before the adjudicatory hearing and that this was irrelevant to a current finding of neglect. However, evidence was admitted as to the condition of the home in which the children were living immediately prior to the detention hearing which would have been some three months prior to the adjudicatory hearing, which depict conditions which were as deplorable and unhealthful as those described for earlier homes. The condition of the earlier homes would have a bearing on the ability of the parents to care for children and also reflect on their concern for their welfare. We detect no error in the admission of this evidence.
Appellants address a vigorous argument to what they assert was the improper use of a "social history" report prior to the court's finding the parents were unfit. It is contended that the adjudicatory hearing was the only proper time that a finding of unfitness could be made and that the evidence presented at that hearing was insufficient to support a finding of unfitness. Accordingly, when the finding of unfitness was made following the dispositional hearing, at which the "social history" report was presented, they were deprived of substantial rights guaranteed by Illinois statutes and both State and Federal decisional law.
Following the adjudicatory hearing the court entered an "Order of Adjudication" in which it found the children to be dependent and neglected, made them wards of the court, continued their custody in the *739 Department, set the dispositional hearing for September 8, 1975, and gave the parents reasonable rights of visitation. The order made no mention of the unfitness of the parents.
Under date of August 25, 1975, the following entry appears on the record sheet:
"It being brought to the attention of the court that no one has been appointed to make a social investigation report, it is ordered that Jess Henderson, with the probation dept., be, and he is hereby appointed to make such report."
The report was filed on December 5, 1975. Appellants characterization of the report as full of hearsay and unverified information is correct.
During the dispositional hearing the report was presented to the court but, following an extensive discussion of the report and objections by the appellants, it was not admitted into evidence.
Section 4-6 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 704-6) provides that the standard of proof and rules of evidence in the nature of civil proceedings are applicable to hearings to determine dependency and neglect. On the other hand, section 5-1 of the Act (Ill. Rev. Stat. 1973, ch. 37, par. 705-1) provides that at the dispositional hearing a less stringent rule pertains. "All evidence helpful in determining this question [of the proper disposition of the minor] including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing." (Emphasis added.)
The Juvenile Court Act contains no express requirement that a finding of parental unfitness must be made following the adjudicatory hearing. To the contrary, the indication is that such finding is properly made following the dispositional hearing since the provision for a finding of parental unfitness and authorization for the guardian to consent to adoption section 5-9 of the Act (Ill. Rev. Stat. 1973, ch. 37, par. 705-9) appears under article 5 of the Act which governs dispositional hearings.
Although the character of evidence permitted in a dispositional hearing is less stringent than that pertaining at an adjudicatory hearing we nevertheless are of the opinion that a finding of parental unfitness with its attendant drastic consequences, should not and cannot be made unless such finding is supported by the traditionally required clear and convincing case. (In re Martin, 48 Ill. App.3d 341, 363 N.E.2d 29; In re Moriarity, 14 Ill. App.3d 553, 302 N.E.2d 491.) Our review of the record and the court's rulings and remarks leaves no doubt that proper standards were adhered to in the finding of parental unfitness in this case. It does not follow, as appellants contend, that simply because the social history report was presented at the dispositional hearing it was a factor in the court's finding of parental unfitness. The report was not admitted into *740 evidence and the court specifically stated that he would disregard any incompetent evidence which might be introduced. It is a settled rule that a judge is considered able to discern the probative value of evidence and disregard that which is incompetent. In re Williams, 36 Ill. App.3d 917, 344 N.E.2d 745; People v. Garner, 6 Ill. App.3d 1, 284 N.E.2d 440.
 8 In addition to the predispositional report, the parents apparently contend that there was a general "relaxation of the rules of evidence" at the dispositional hearing which would have rendered any reliance by the court upon evidence presented there in making his finding of parental unfitness grounds for reversal. They do not specify what this relaxation consisted of other than the report. After examining the entire record we do not find that any such "relaxation of the rules of evidence" occurred, so as to preclude the court from relying upon proper evidence presented at the dispositional hearing in making a finding of parental unfitness. Even when the evidence presented at the dispositional hearing is excluded, there remains sufficient evidence to sustain such a finding. Too, we think it entirely possible for the court to have also relied upon evidence admitted at the adjudicatory hearing only even though he reserved his formal finding of unfitness until the end of the dispositional hearing. We stated in In re Gates, 57 Ill. App.3d 844, 851, 373 N.E.2d 568, 574:
"We note, * * * that although the Juvenile Court Act clearly provides for separate hearings (See Ill. Rev. Stat. 1975, ch. 37, pars. 704-6, 704-8, 705-1), the power of the court to conduct simultaneous hearings has been implicitly recognized in decisions analyzing the admissibility of evidence in such hybrid proceedings. (See People ex rel. Jones v. Jones, 39 Ill. App.3d 821, 350 N.E.2d 826 (5th Dist. 1976); People v. Brady, 7 Ill. App.3d 404, 287 N.E.2d 537 (4th Dist. 1972).)"
We can discern no reason why evidence received at the adjudicatory hearing relevant to parental unfitness should not be considered by the court at the conclusion of the dispositional hearing if the decision of unfitness is reserved to that time.
 9 The parents further object to the report as containing information concerning the condition of the prospective adoptive homes for the children. They contend that such information was not permissible before the issue of parental unfitness was resolved. We agree. Parental unfitness can be determined only upon clear and convincing evidence. (In re Deerwester, 131 Ill. App.2d 952, 267 N.E.2d 505.) Until a finding of parental unfitness is made, evidence as to the best interests of the child, including the condition of prospective adoptive homes, is irrelevant. (In re Burton, 43 Ill. App.3d 294, 356 N.E.2d 1279.) However, the conclusion we have reached as to the status of the report in the eyes of the court and *741 the fact that there is no indication that he relied upon it in making his decision is also dispositive of this objection.
 10 The appellants also allege that the court unduly restricted their proof. This allegation appears to be based upon the fact that the court refused to hear evidence which the attorney for the parents asserted at trial was meant to rebut information contained in the predispositional report. In view of the fact that we have concluded that the court did not consider the report in his findings there can be no objection that he refused to admit evidence intended to rebut it. In fact, we have examined the complete record and are of the opinion that the court was quite lenient in his evidentiary rulings concerning the appellant's proof.
One final evidentiary objection by the appellants must be considered. They assert that testimony was given in violation of the social worker-client privilege set forth in section 20 of the Social Workers Registration Act (Ill. Rev. Stat. 1973, ch. 23, par. 5320). We agree that certain portions of the testimony, specifically evidence as to conversations between the parents and social workers for the Department and the Illinois Department of Public Aid, was admitted in violation of the social worker-client privilege attempted to be asserted by the parents at the hearing. However, we have searched the record and are of the opinion that even after this evidence is excluded there remains sufficient, even ample, evidence to support a finding of parental unfitness.
The appellants' final objection is that the finding of parental unfitness was against the manifest weight of the evidence. Before proceeding to a review of the evidence we should make clear that this court is aware of and recognizes the inherent right of parents to the "society and custody" of their children. (In re Gonzales, 25 Ill. App.3d 136, 323 N.E.2d 42, and cases cited therein.) Illinois courts have always held that parental rights may only be terminated when unfitness is established by clear and convincing evidence. "The rights of natural parents to their children cannot be severed unless a clear and convincing case is presented in strict compliance with the Adoption Act." (In re Moriarity, 14 Ill. App.3d 553, 556, 302 N.E.2d 491; In re Perez, 14 Ill. App.3d 1019, 1020, 304 N.E.2d 109.) We are also aware that in dealing with questions of parental unfitness the search for fixed standards and binding precedent is elusive. Each case must be decided in accordance with its own unique facts.
In our view there was competent, admissible evidence from several sources, social workers, neighbors, the deputy sheriff, a public health nurse, and homemakers placed in the home by the Department, more than sufficient to sustain a finding of parental unfitness which we will summarize briefly. The children were repeatedly observed to be hungry, filthy and covered with untreated insect bites. The houses in which the *742 children lived were filthy, full of garbage and trash, filled with the odor of urine and rotten food, cold in the winter and thick with flies in the summer. The children were observed on several occasions eating food scattered on the floor and over the furniture. Virgil Sparrow was seen on several occasions beating the children about the head and shoulders with a belt. He was described as losing control and running about beating the children with his belt randomly as he came upon them. There was testimony from one observer who had spent considerable time in the home that Mr. Sparrow's method of interaction with the children was to either ignore them or to scream, yell and beat them. There was evidence that at one home unhousebroken dogs were kept in the basement and the children were allowed to play in the dog excrement. The parents were observed frequently screaming and arguing with each other in front of the children. The mother was observed to have frequent episodes of irrational violent behavior before the children. There was testimony that at least three times in the year preceding the detention hearing the mother was hospitalized for a suicide attempt involving an overdose of drugs. This is a picture of an unstable, we would say unsafe, home for these six minor children. The petitions asking for the termination of parental rights alleged substantial, repeated neglect pursuant to section 1 of the Adoption Act (Ill. Rev. Stat. 1973, ch. 4, par. 9.1-1). We find this evidence ample to sustain such an allegation.
For the foregoing reasons the judgment of the trial court is affirmed.
Affirmed.
G.J. MORAN and KARNS, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
Mr. JUSTICE JONES delivered the opinion of the court:
We had thought our original opinion adequately dealt with appellants' contentions that prejudicial error intervened in the trial court hearings when the court reserved its ruling on terminating parental rights until the close of the dispositional hearing and with appellants' claim that the court made improper and prejudicial use of the "predispositional report" submitted by a court probation officer. Nevertheless, appellants further address these issues in a petition for rehearing and we believe further comment is required.
Appellants assert that at the conclusion of the dispositional hearing the trial court indicated that it was applying the "best interests of the child" standard in terminating parental rights. They quote the following excerpt of the judge's comments at the close of the dispositional hearing:

*743 "* * * But through the whole thing, we are not concerned here, with what is the best interest of these parents, nor what they probably desire, nor what they may not desire. We are concerned here with what is best for the children. That is our sole purpose of being here this afternoon, to make a disposition of this case, with reference to these children. What is in the best interest of these children."
The appellants' petition further argues: "The employment of the dispositional powers of the Juvenile Act should be strictly limited to post-adjudicatory matters. A finding of unfitness for purposes of termination of parental rights is clearly not a post-adjudicatory matter."
The appellants concede that the dispositional hearing is a "best interests of the child" hearing. (Ill. Rev. Stat. 1973, ch. 37, par. 705-1.) It was at the close of the dispositional hearing that the phrase was used and, of course, in the context of the dispositional hearing, the use of the phrase was proper. It is true enough, though, as appellants argue, that in the context of an adjudicatory hearing where termination of parental rights is being sought, founded upon asserted parental unfitness, that use of the phrase "best interests of the child" is irrelevant and improper.
Our examination of the entirety of the remarks of the trial court, delivered at the close of the dispositional hearing, leaves no room for doubt that the trial court afforded proper deference to the rules of evidence and the applicable rules of law pertaining to each stage of the proceeding notwithstanding the fact that the finding of parental unfitness was made following the dispositional hearing.
Even in the above-quoted portion of his remarks, singled out by appellants, it is obvious that the phrase "best interest of these children" was used in the context of the disposition phase of the hearing, for the phrase "best interest of the children" was shortly followed by "to make a disposition of this case with reference to these children." Reference to other portions of the court's remarks pointedly disclose that the court was applying proper standards of proof in evaluating the matter of the fitness of the parents. Portions of the remarks are quoted:
"It is the children, who are absolutely defenseless, that the Court is obligated to do its best to look after. Now, I appreciate that this is a rather awesome decision that the Court has to make. But if there ever was a case where the evidence indicated that the parents would be unable properly to rear their children, it is this case. Mrs. Sparrow is, by all, I am not blaming Mr. and Mrs. Sparrow, now, please, don't misunderstand me. There are not, the Court is not going to find that they are at fault. The Court is not going to find that Mrs. Sparrow is at fault or that Mr. Sparrow is at fault. The question is, can they properly rear these children, whether it is their *744 fault or whether they just don't have the ability. The Court is of the opinion that they don't have the ability, that they are unfit and improper parents. * * * That is all here before the Court and there's no evidence presented whatsoever, but what these parents, because of their inability to get along, to raise their children, because of their inability to cope with the problems that the children presented, caused the children to be in a state of constant turmoil, bickering, fussing, quarreling, keeping the children tore up all the time, probably that is one of the worst things, the kind of environment the children could be brought into. * * * The Court is of the opinion that it has been overwhelmingly demonstrated, and conclusively, I might say, that these parents will be unable, because of their unfitness, to properly raise, and educate these children."
 11 We think these remarks of the trial court conclusively demonstrate that he had proper regard for the requirement of a finding of parental unfitness in order to terminate parental rights.
Appellants raise an additional argument in their petition for rehearing when they assert that the failure of the trial court to proceed in accordance with section 8(e) of the Adoption Act (Ill. Rev. Stat. 1973, ch. 4, par. 9.1-8(e)) renders its orders void.
In dealing with this argument as originally raised we stated in our opinion: "This case is not, however, a proceeding under the Adoption Act and its provisions are not relevant here, especially where Linda Sparrow was accorded the procedural safeguards above mentioned." In their petition for rehearing the appellants have singled out the words "not relevant here" as being an expression upon our part that the designated provision of the Adoption Act was never relevant in a Juvenile Court Act hearing where a guardian is to be appointed and given power to consent to adoption. Such purport was not our intention.
Section 5-9(3) of the Juvenile Court Act provides in pertinent part: "A finding of the unfitness of a nonconsenting parent must be made in compliance with that [Adoption] Act. Provisions of that Act relating to minor parents and to mentally ill or mentally deficient parents apply to proceedings under this Section." This court has recently noted the application of this section of the statute to the Adoption Act in In re Gates (1978), 57 Ill. App.3d 844, 851, 373 N.E.2d 568, 574, where we stated:
"According to section 5-9(3) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705-9(3)), a nonconsenting parent must be found unfit under the provisions of the Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1-1 et seq.) before the court may authorize the appointed guardian to consent to the adoption of the minor."
Thus, the question is not whether in a proper case the noted provision *745 of the Adoption Act becomes relevant in a proceeding under the Juvenile Court Act, it does, but whether it had been violated in this case. We adhere to our decision that it was not.
Although at the time of the commencement of the proceeding and the detention hearing Linda Sparrow was an involuntary patient at the Anna State Hospital, she was represented at the detention hearing by an attorney. At this initial stage of the proceeding she was not being deprived of her rights to the children and consent to adoption in her behalf (the trust of the concern of the incorporated section of the Adoption Act) was not being sought. The obvious purpose of the detention hearing is to furnish a stable and sustaining situation for the children pending a hearing of the case on its merits.
 12 At the time of the adjudicatory stage of the proceeding the status of Linda Sparrow at the Anna State Hospital had been changed from involuntary to voluntary. Again, at that hearing she was represented by an attorney and was present in person for one day of the hearing. She was also present in person throughout the dispositional hearing and was represented there at all times by attorney. Thus, we find that there was full compliance with the requirements of the incorporated section of the Adoption Act and appellants arguments in that regard are not well taken.
The remaining points in appellants' petition for rehearing we deem to have been adequately covered in our opinion and will not be further addressed here.
For the foregoing reasons, the petition for rehearing is denied.
G.J. MORAN and KARNS, JJ., concur.