*In re* DAWN PEREZ *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Susan Green, Respondent-Appellant).—*In re* DAWN PEREZ *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellant, v. Robert Perez, Respondent-Appellee).

Second District Nos. 2—87—0192, 2—87—0204 cons.

Opinion filed August 18, 1988.—Rehearing denied September 26, 1988.

Mary Robinson, of Robinson & Skelnik, of Elgin (Josette Skelnik, of counsel), for appellant Susan Green.

Judith M. Brawka, Public Defender, of Geneva (Bruce R. Steinberg, Assistant Public Defender, of counsel), for appellee Robert Perez.

Robert F. Casey, State's Attorney, of Geneva (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Glenn M. Sowa, of Law Offices of John F. Donahue, of Geneva, guardian *ad litem*.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

In appeal No. 2—87—0192, respondent, Susan Green, the natural mother, appeals from the order of the circuit court of Kane County terminating her parental rights to her minor children, Dawn and Reina Perez. In appeal No. 2—87—0204, the State appeals from the

same order which refused to terminate the parental rights of the natural father, Robert Perez, to his daughters Dawn and Reina. The two appeals have been consolidated for oral argument and opinion.

On November 29, 1982, the Department of Children and Family Services (DCFS) contacted Catholic Social Services (CSS) regarding the temporary placement of two minor children, Dawn and Reina Perez, in foster care. The minor's mother, Susan Green, was suffering from pneumonia and was to be admitted to the hospital, and the father, Robert Perez, had recently been released from incarceration and did not have a place for the children. At this time, Dawn was five years old and Reina was 1½ years old. On December 1, 1982, the State filed a petition for adjudication alleging the minors to be neglected as to their mother in that she was unable to care for them due to severe physical illness and that it was in the minors' best interest that they be made wards of the court. (Ill. Rev. Stat. 1981, ch. 37, par. 702—4.) Additionally, on December 1, 1982, at the shelter care hearing, the court ordered DCFS to take temporary custody and guardianship of the minors pending a hearing of the State's petition. On January 18, 1983, after a hearing, Susan being physically well enough to care for the minors, and by agreement, the cause was continued to March 22, 1983, and the minors were returned to the custody and guardianship of respondent-mother with continued supervision by DCFS.

Between January 18, 1983, and March 22, 1983, Helen Twedt, a caseworker with CSS in adoption and foster care, attempted to meet with respondent on a regular basis, but respondent was not at home most of the time when Mrs. Twedt scheduled visits or when she attempted to find respondent on unscheduled visits. On February 9, 1983, Mrs. Twedt visited respondent's home. She was let in by the five-year-old minor, Dawn. Helen Twedt stated Susan appeared lethargic, and Susan stated she was sick. Susan stated that some friends who had been staying at her place took her food stamps, money, food and some of the furniture but she was too sick to worry about it at the time. Mrs. Twedt stated the children looked unkempt and that Dawn said she was making some food for them to eat. Mrs. Twedt made an appointment to return early the next week to talk with Susan after she had a chance to get back on her feet. When Mrs. Twedt arrived, Susan and the minors were not there. Mrs. Twedt could not find Susan or the minors before the court hearing on March 22, 1983.

On March 22, 1983, a hearing order was entered which continued the cause, continued DCFS' supervision of the minors, and returned temporary custody and guardianship to DCFS. There is no record of

the March 22, 1983, hearing, but, apparently, custody was returned to DCFS due to respondent's readmittance to a hospital because Mrs. Twedt testified at the termination hearing that she met with respondent at the hospital to tell her what occurred at the March 22, 1983, hearing. Mrs. Twedt stated she told Susan the children were returned to foster care because respondent was unable to take care of them.

The cause was continued periodically by agreement of the parties with the minors remaining in a foster home under the supervision of DCFS. Between April 1983 and December 1983, respondent had regular visitation with the minors at CSS. Helen Twedt, the caseworker, met with respondent and developed a service plan to help respondent achieve return of the minors to her custody.

On December 8, 1983, an adjudicatory hearing was finally held on the State's initial petition to adjudicate the minors neglected based on respondent's inability to take care of them due to respondent's severe physical illness. At this hearing, the State indicated that although the December 1, 1982, petition alleged neglect due to physical illness, the State felt the case was one of general neglect and that the petition of December 1, 1982, had been orally amended on the record but an amended petition had never been filed. The State sought to go beyond the issue of physical illness and prove general neglect. Respondent's counsel objected and orally moved to suppress such evidence absent proof that the State had amended the petition. After a discussion, respondent stipulated to the State's offer of proof as to the original petition based on physical illness. The stipulated facts were that respondent was hospitalized for a short time beginning on November 29, 1982, for pneumonia; that before the minors could be returned, respondent again became very sick and was hospitalized in March 1983 for an alleged blood clot and for pneumonia. Since March 1983, respondent has not been hospitalized but has been "ill off and on and for that reason as well as others not alleged in this petition," the respondent is unable to care for the minors. The trial court adjudicated the minors neglected based on the original petition and the parties' stipulation. A dispositional hearing was set for January 10, 1984.

The dispositional order of January 10, 1984, provided the following: (1) the minors were committed to DCFS and continued in foster care; (2) respondent would enroll in and complete a child development course at Waubansee; (3) respondent would enroll in and attend counseling at Kane-Kendall mental health; (4) respondent would cooperate with DCFS and CSS; (5) respondent would continue regular visitation with the minors; (6) respondent would establish a living arrangement suitable for herself and the children; and (7) respondent

would maintain a stable income. The conditions of the dispositional order were the same as the service plan that Mrs. Twedt had set up with respondent since March 22, 1983, in attempting to help respondent regain custody of the minors. Respondent had agreed in writing without objection to these conditions, and, additionally, respondent agreed to the dispositional order at the hearing on January 10, 1984, prior to the court's entry of the order.

On November 12, 1985, the State filed a petition to terminate the parental rights of Susan Green alleging that termination was in the best interests of the minors and that respondent was an unfit parent under section 1(D)(m) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m)) in that she: (1) failed to make reasonable efforts to correct the conditions which were the basis of removal of the minors from her custody and/or (2) failed to make reasonable progress toward return of said minors within 12 months from the adjudication of neglect on December 8, 1983. A bifurcated trial was had as to the issues of unfitness and best interests. After a hearing on the issue of unfitness, a written opinion was issued March 4, 1986, finding that the State had proved by clear and convincing evidence that Susan Green had failed to make reasonable progress toward the return of her children within 12 months of the adjudication of neglect. A hearing was later held at which it was determined that it was in the best interests of the minors that Susan Green's parental rights be terminated, and an order terminating her parental rights was entered January 16, 1986. Respondent's post-trial motion was denied, and a timely appeal was filed.

Respondent only contests the trial court's finding that she is an unfit parent. She argues: (1) that the State failed to prove that the conditions of the dispositional order were reasonably related to the basis for the initial neglect adjudication and that any failure of respondent to meet the conditions in the dispositional order is not a proper ground for a finding of unfitness; and (2) assuming a legitimate basis existed for the conditions imposed, the trial court's finding that the State proved by clear and convincing evidence that respondent failed to make reasonable progress was against the manifest weight of the evidence.

First, we address respondent-mother's contention that the State, to properly prove unfitness of a parent on the ground of failure to make reasonable progress towards return of the child within 12 months of an adjudication of neglect, must establish that the conditions of the dispositional order entered after an adjudication of neglect were reasonably related to the basis of the petition to adjudicate

the child a neglected minor. We do not find that the State is required to prove such a relationship between the dispositional order and the adjudication of neglect in a proceeding to terminate parental rights based on parental unfitness as defined in section 1(D)(m) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m)). As will be discussed below, such a requirement is not supported by the authority cited by the respondent-mother, nor do we find the language and scheme of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701—1 et seq.) to be consistent with imposing such a requirement in a hearing on a petition to terminate parental rights.

■■ ■ Section 1(D)(m) of the Adoption Act provides in relevant part:

> " 'Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption, the grounds of such unfitness being any one or more of the following:
>
> * * *
>
> (m) failure by a parent to make reasonable efforts to correct the conditions which were the basis for the removal of the child from such parent, or to make reasonable progress toward the return of the child to such parent within 12 months after an adjudication of neglected minor under Section 2—4 or dependent minor under Section 2—5 of the Juvenile Court Act."

(Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m).)

The best interests and welfare of the person to be adopted is the paramount consideration in the construction and interpretation of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1525). Subsection (m) of section 1(D) of the Adoption Act states two grounds of unfitness: failure to make reasonable efforts and failure to make reasonable progress. (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m).) The reasonable efforts and reasonable progress standards are separate grounds for unfitness and either is sufficient for a finding of unfitness. (*In re Austin* (1978), 61 Ill. App. 3d 344, 378 N.E.2d 538.) Respondent-mother interprets subsection (m) of section 1(D) to require that the determination of reasonable progress toward return of the child within 12 months of an adjudication of neglected minor be based on the reasons for the initial adjudication of neglect. (See 61 Ill. App. 3d 344, 378 N.E.2d 538; *In re Bennett* (1980), 80 Ill. App. 3d 207, 399 N.E.2d 735.) However, our reading of respondent-mother's authority and our interpretation of subsection (m) of section 1(D) show that a determination of reasonable progress relates to the *goal of return of the child* and such a determination is not as constrained by the original adjudi-

cation of neglect as contended by respondent-mother.

In *Austin*, the court discussed the determination of reasonable progress under subsection (m) of section 1(D) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m)). In *Austin*, the court stated that reasonable progress "requires at a minimum measurable or demonstrable movement toward the goal of return of the child." (*In re Austin* (1978), 61 Ill. App. 3d 344, 350, 378 N.E.2d 538, 542.) The court then went on to discuss what *may* be involved in such determination. The court stated:

> "Whether a small amount of progress is 'reasonable' must be determined with proper regard for the best interests of the child. Such an inquiry might well involve consideration of the limitations of the parents, but also would necessarily require consideration of the possibility that the child might be forced to indefinitely reside with a succession of impermanent foster parents. *Reasonableness may also depend on the situation which led to removal of the children, since slight progress in correcting a situation which was relatively mild could be viewed as more satisfactory than the same degree of progress in correcting a situation that greatly endangered a child.*
>
> *In this connection, the record of the prior proceedings for removal of the child [is] indispensable. In an unfitness hearing, testimony may well cover the current status of the parents and their activities since removal of the children, but the best evidence of the conditions which compelled removal of the children is that prior record.* Because it is impossible to measure progress without referring to a prior status, current status and the process by which movement from the one status to the other occurred, absence of evidence regarding the prior status would render a determination of 'reasonable progress' meaningless." (Emphasis added.) (61 Ill. App. 3d at 350, 378 N.E.2d at 542-43.)

In *Bennett*, the court, relying on *Austin*, stated:

> "In evaluating the statutory standard of 'reasonable progress,' it is essential that the trial court have considered the situation triggering the minor's initial removal as a benchmark for measuring progress. Of respondent's status at that time, we know nothing as the record of the prior proceeding was not considered by the trial court." (*In re Bennett* (1980), 80 Ill. App. 3d 207, 212, 399 N.E.2d 735, 738.)

The court in *Bennett* remanded the cause to the trial court for consideration of that petitioner's status as revealed in the record of the ini-

tial adjudicatory hearing at which the minor was adjudicated neglected. (80 Ill. App. 3d at 212, 399 N.E.2d at 739.) Respondent-mother's argument relies heavily on this fact. However, the reason the court in *Bennett* discussed the prior status of the mother as revealed in the initial adjudicatory hearing was due to the fact that the State's initial petition in *Bennett* sought not only an adjudication of neglect but additionally sought to have the mother's parental rights terminated due to her alleged unfitness. (80 Ill. App. 3d at 208, 399 N.E.2d at 736.) The trial court in *Bennett* apparently received evidence on both issues at the adjudicatory hearing on the State's initial petition. However, the trial court in *Bennett* reserved the issue of termination of parental rights. This peculiar factual situation regarding the proceedings of the case in the trial court in *Bennett* is why the reviewing court in *Bennett* referenced the initial status of the mother to the adjudicatory hearing. The Juvenile Court Act in effect at the time of the *Bennett* trial court's actions did not require or provide for an adjudication of parental unfitness at the adjudicatory hearing on a neglect petition. Ill. Rev. Stat. 1977, ch. 37, pars. 704–1, 704–6; see *In re Smith* (1981), 95 Ill. App. 3d 373, 375, 420 N.E.2d 200, 202 (the court stated "It is apparent *** that the statutory requirements in the petition to adjudicate the child neglected do not require allegations concerning the issue of parental fitness"); *In re Johnson* (1981), 102 Ill. App. 3d 1005, 429 N.E.2d 1364 (issue in adjudicatory hearing is whether minor is neglected not the fitness of his parents).

■ We interpret *Austin* and *Bennett* to hold that: (1) reasonable progress is measurable or demonstrable progress toward return of the child and (2) to measure reasonable progress, evidence concerning the initial status of the parent at the time of removal is required in order to determine progress toward return of the child. (*In re Austin* (1978), 61 Ill. App. 3d 344, 378 N.E.2d 538; *In re Bennett* (1980), 80 Ill. App. 3d 207, 399 N.E.2d 735; *In re E.J.F.* (1987), 161 Ill. App. 3d 325, 514 N.E.2d 544 (under section 1(D)(m) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m)), parents required to make reasonable progress toward return of child to their home); *In re Doolan* (1981), 101 Ill. App. 3d 322, 427 N.E.2d 1348 (reasonable progress is measured from conditions existing at the time custody is taken from the parent and requires demonstrable movement towards accomplishing goal of return of the child).) We do not interpret subsection (m) of section 1(D) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m)) and respondent's authority to require a showing at a termination hearing that the conditions imposed upon a parent at a dispositional hearing, designed to achieve return to the par-

ent of a minor adjudged a ward of the court and placed with DCFS, are reasonably related to the initial basis for adjudging the minor neglected. Additionally, as we discuss subsequently, the procedures for handling minors subject to the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701—1 *et seq.*) do not establish the type of relationship between the hearing to adjudge a minor neglected and the subsequent dispositional hearing which would support respondent-mother's contention.

As just discussed, the issue for determination at the termination hearing was "reasonable progress toward return of the children," and evidence of the parents' status at the time of removal is necessary in order to make a meaningful determination. (*In re Austin* (1978), 61 Ill. App. 3d 344, 378 N.E.2d 538.) The issue of termination of parental rights arises under section 5—7 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—7), when a minor adjudicated a ward of the court and removed from his parents is the subject of a petition for adoption as authorized by section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—9). It is section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—9) which requires proof by clear and convincing evidence that a parent or legal guardian is unfit as defined in section 1(D) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)). Evidence of the basis for removing a child, adjudicated a ward of the court, does not necessarily arise at the adjudicatory hearing to determine if the minor is neglected, and further, a minor adjudged a ward of the court may be removed from his parents and later placed for adoption without ever having been adjudicated neglected. See Ill. Rev. Stat. 1985, ch. 37, par. 701—1 *et seq.*

Before a minor is subject to the court's jurisdiction under the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701—1 *et seq.*), a petition pursuant to section 4—1 of the Act must be filed alleging sufficient jurisdictional facts and that it is in the best interest of the minor and the public that he be adjudged a ward of the court. (Ill. Rev. Stat. 1985, ch. 37, par. 704—1.) The jurisdictional facts may relate to any of several grounds. (Ill. Rev. Stat. 1985, ch. 37, par. 702—1.) The jurisdictional grounds are delinquency, need of supervision or authoritative intervention, neglect or dependency as defined in sections 2—2 through 2—5 of the Juvenile Court Act. (Ill. Rev. Stat. 1985, ch. 37, pars. 702—1 through 702—5.) Any of these grounds, if properly proved and if it is found to be in the best interests of the minor and the public, will lead to the minor being adjudged a ward of the court. (Ill. Rev. Stat. 1985, ch. 37, pars. 701—18, 704—8, 705—1.) Once adjudicated a ward of the court, the minor then becomes subject to the

dispositional powers of the court in respect to minors adjudged wards of the court. Ill. Rev. Stat. 1985, ch. 37, pars. 701—10, 701—18, 705—1.

■ Section 5—2 of the Juvenile Court Act lists the various dispositions available to the court in respect to minors adjudicated wards of the court. (Ill. Rev. Stat. 1985, ch. 37, par. 705—2.) Among other dispositions, section 5—2 authorizes any minor adjudicated a ward of the court on any proper basis to be released to his parents or placed in accordance with section 5—7 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—7 (authorizing removal and placement with DCFS)). (Ill. Rev. Stat. 1985, ch. 37, pars. 705—2(a) through 705—2(e).) It is at the dispositional hearing where placement of a minor under section 5—7 is ordered or where a minor, found to be neglected or abused by his parent or guardian, is to be returned to that parent, that the issue of parental fitness or ability to care for the minor is raised. (Ill. Rev. Stat. 1985, ch. 37, pars. 705—7, 705—2(d).) Because *any ward of the court, not just neglected children, may be removed from his parent or guardian by a dispositional order of placement pursuant to section 5—7*, it would be inconsistent with the Juvenile Court Act to require that conditions imposed upon a parent at the dispositional hearing, designed to achieve the return of a child removed from the parent pursuant to section 5—7, be reasonably related to the jurisdictional facts which ultimately lead to the adjudication of wardship.

Additionally, section 5—7(3) of the Juvenile Court Act provides in relevant part:

> "When a minor is placed with a suitable relative or other person, the court shall appoint him the legal custodian or guardian of the person of the minor. When a minor is committed to any agency, the court shall appoint the proper officer or representative thereof as legal custodian or guardian of the person of the minor. Legal custodians and guardians of the person of the minor have the respective rights and duties set forth in Section 1—11 [Ill. Rev. Stat. 1985, ch. 37, par. 701—11] except as otherwise provided by order of court; but no guardian of the person may consent to adoption of the minor unless that authority is conferred upon him in accordance with Section 5—9." (Ill. Rev. Stat. 1985, ch. 37, par. 705—7(3).)

The fact that section 5—9 (Ill. Rev. Stat. 1985, ch. 37, par. 705—9) is explicitly referenced in section 5—7(3) shows that any ward of the court may be the subject of a petition to adopt, when the ward of the court is removed from a parent by being placed pursuant to section

5—7. (Ill. Rev. Stat. 1985, ch. 37, par. 705—7(3).) Further, section 5—9, which raises the issue of parental fitness in regard to a nonconsenting parent, states "[a] ward of the court under this Act [Juvenile Court Act] *** may be the subject of a petition for adoption." (Ill. Rev. Stat. 1985, ch. 37, par. 705—9(1).) Section 5—9 makes no distinction as to the initial basis for adjudicating a minor a ward of the court under the Juvenile Court Act.

At the adjudicatory hearing, unless the minor is alleged to be delinquent, in which case rules of evidence in the nature of criminal proceedings apply, the rules of evidence in the nature of civil proceedings apply. (Ill. Rev. Stat. 1985, ch. 37, par. 704—6.) However, when the court considers a proper disposition as to a ward of the court, the court may consider all helpful evidence even though not competent for purposes of the adjudicatory hearing and may rely on such evidence to the extent of its probative value. (Ill. Rev. Stat. 1985, ch. 37, par. 705—1(1); *In re White* (1982), 103 Ill. App. 3d 105, 429 N.E.2d 1383; *In re Calkins* (1981), 96 Ill. App. 3d 74, 420 N.E.2d 861.) Section 5—1 of the Juvenile Court Act evidences the legislature's intent to give the trial court wide latitude in considering evidence relevant and helpful to the court's determination of a proper disposition. (*In re White* (1982), 103 Ill. App. 3d 105, 429 N.E.2d 1383.) Section 5—1 allows the court to go beyond the evidence adduced at the adjudicatory hearing in determining a proper disposition at the dispositional hearing. Thus, section 5—1 is inconsistent with a requirement that all conditions imposed at the dispositional hearing relate only to the evidence presented at the adjudicatory hearing.

In summary, our review of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701—1 *et seq.*) does not support respondent-mother's contention that the State, in a termination hearing, was required to prove a reasonable relationship between the conditions imposed at the dispositional hearing and the initial adjudication based on neglect.

Next, we address respondent-mother's contention that the trial court's finding that she was an unfit parent, which ultimately resulted in the termination of her parental rights, was against the manifest weight of the evidence. The issue of termination of parental rights based on parental unfitness arises when a petition to appoint a guardian with authority to consent to adoption is filed in respect to a minor who is a ward of the court and the parents of the minor have not consented to adoption. (See Ill. Rev. Stat. 1985, ch. 37, pars. 705—7(3), 705—9(2).) In such a situation, the petition must allege and the State must prove that: (1) appointment of a guardian with authority to consent to adoption is in the best interests of the minor; and (2)

a nonconsenting parent is an unfit person as defined in section 1(D) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)), as shown by clear and convincing evidence. (Ill. Rev. Stat. 1985, ch. 37, pars. 704—1(5), 705—9(2).) A trial court's finding of parental unfitness in a hearing to terminate parental rights and appoint a guardian with authority to consent to adoption will not be reversed by a reviewing court unless the finding of unfitness is against the manifest weight of the evidence. *In re Boolman* (1986), 141 Ill. App. 3d 508, 491 N.E.2d 1.

In the instant case, the trial court's finding of unfitness as to respondent-mother was based on the "reasonable progress" standard listed in subsection (m) of section 1(D) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m)). The trial court in its order terminating parental rights stated in relevant part:

> "In reviewing the overall testimony that was taken before me in conjunction with the terms of the dispositional hearing, I find that Mrs. Green did visit the children most of the time, but that in all other conditions she did not make any progress, let alone reasonable progress, to have the children returned to her within twelve months following the entry of the adjudication order. Argument has been made that she was living with John Green, and, therefore, she had living arrangements. And since Mr. Green was employed, she had some type of an income through him. However, it appears that the living arrangements and the income arrangement was for her convenience and not for the welfare of the children. I find that the State has proved by clear and convincing evidence that Mrs. Green has not made reasonable progress under the terms of the statute to have the children returned to her and, therefore, grant their petition on that basis."

The record of the parental fitness hearing on the petition to terminate respondent-mother's parental rights does not support the trial court's finding that respondent-mother was proved unfit by clear and convincing evidence.

■ As previously discussed in this opinion, evidence of a parent's initial status at the time of removal of the child is necessary in order for a trial court to make a meaningful determination of reasonable progress toward return of the child. (*In re Bennett* (1980), 80 Ill. App. 3d 207, 399 N.E.2d 735; *In re Austin* (1978), 61 Ill. App. 3d 344, 378 N.E.2d 538.) The record in the instant case shows that temporary custody of the minors was taken from respondent-mother on March 22, 1983, for a second time due to the physical illness of the mother.

The record also shows that custody of the children has never been returned to respondent-mother since that time. Helen Twedt and, later on, Jan McPhillips were the caseworkers involved with respondent-mother from the time DCFS first became involved in November 1982. They were the only witnesses called by the State at the fitness hearing. Respondent-mother and the minors, through their appointed counsel, did not present any evidence beyond the examination of these two witnesses produced by the State. Their testimony concerned the failure of respondent-mother to make reasonable progress by her failure to meet the conditions placed upon her, with her consent, in the dispositional order which committed the minors to the DCFS as provided for in sections 5—2 and 5—7 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, pars. 705—2, 705—7). However, this testimony was fatally flawed in that *no evidence was ever introduced relative to respondent-mother's ability or fitness to care for the minors prior to or at the time of removal. In re Austin* (1978), 61 Ill. App. 3d 344, 378 N.E.2d 538; see *In re Sparrow* (1978), 59 Ill. App. 3d 731, 376 N.E.2d 236 (evidence as to condition of homes in which children lived two years before adjudicatory hearing was relevant and admissible in hearing to terminate parental rights as such evidence had bearing on ability of parents to care for children).

All the record shows is that respondent-mother was too ill to care for her children, and the children were removed from her custody temporarily as authorized by the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 703—3 *et seq.*). The children were never returned and were later adjudicated neglected due to their mother's physical illness. The fact that the children were removed from their mother due to her physical illness did not prevent a showing that placement under section 5—7 of the Juvenile Court Act was a proper dispositional order in respect to these minors once they were made wards of the court. (Ill. Rev. Stat. 1985, ch. 37, pars. 705—2, 705—7.) However, since respondent-mother agreed to such placement at the dispositional hearing, there is an absence in the record of that hearing as to evidence of her fitness or ability to care for these minors. However, the fact that respondent-mother agreed to the order does not alleviate the State's burden to introduce evidence at a later hearing on termination of parental rights as to respondent-mother's fitness at the time the children were removed. There must be some reason why these children were removed temporarily and then after being adjudicated wards of the court committed to DCFS pursuant to section 5—7. There was no evidence introduced at the termination hearing to indicate, other than the physical illness of respondent-mother, why these

children were removed and no evidence as to why they were kept by DCFS pursuant to numerous court orders entered throughout these proceedings.

■ Our review of the transcripts from the fitness hearing reveals that the trial court mistakenly believed that any evidence of unfitness must be from the date of the adjudicatory hearing and thereafter. However, the court misconceived the issue the State was required to prove. In spite of the 12-month analysis which runs from the date of the adjudication of neglect, evidence of a parent's ability to care for a minor child, prior to the adjudicatory hearing, is admissible on the issue of parental unfitness if it bears on the issue of a parent's ability in caring for the minor prior to removal. (*In re Sparrow* (1978), 59 Ill. App. 3d 731, 376 N.E.2d 236; see *Adams v. Adams* (1982), 103 Ill. App. 3d 126, 430 N.E.2d 744 (in evaluating fitness of parents for the exercise of parental rights, court must look to the entirety of parents' conduct over period of time in question).) To determine whether *reasonable progress toward return of a child within 12 months* has been made, evidence of a parent's ability to care for the minor prior to or at the time of removal *must be considered* in order to make a meaningful determination. (*In re Austin* (1978), 61 Ill. App. 3d 344, 378 N.E.2d 538.) Such evidence will concern facts involving the time period before the adjudication of neglect, because the minor's removal may have occurred before the adjudication of neglect, where, as in the instant case, the court orders DCFS to take temporary custody of the minor and, at a later date, declares the minor a ward of the court and orders placement with DCFS pursuant to section 5—7 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—7).

■ While there is evidence in the record that respondent-mother failed to make progress as to the conditions imposed upon her at the dispositional hearing, this failure only relates to her progress after the children were removed. The trial court could not properly find, nor are we able to review, whether reasonable progress toward return of the children had been made without evidence as to respondent-mother's status at the time of removal. (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m); *In re Austin* (1978), 61 Ill. App. 3d 344, 378 N.E.2d 538.) We must reverse the trial court's finding of unfitness and the order terminating parental rights based thereon, because the finding of parental unfitness is against the manifest weight of the evidence. (*In re Boolman* (1986), 141 Ill. App. 3d 508, 491 N.E.2d 1.) In light of the continuing nature and discretion vested in the courts as to wards of the court and the trial court's misconception of what evidence was relevant to the issue of parental unfitness, we remand this

cause for a rehearing on the issue of termination of respondent-mother's parental rights. See *Layton v. Miller* (1975), 25 Ill. App. 3d 834, 322 N.E.2d 484; see *In re Johnson* (1985), 134 Ill. App. 3d 365, 480 N.E.2d 520.

CASE NO. 2–87–0204

The State appeals the order of the trial court which denied the State's petition to terminate the parental rights of the natural father, Robert Perez, on the ground of unfitness based on depravity. We affirm the order of the trial court as to Robert Perez.

 On January 23, 1986, the State filed an amended petition to terminate the parental rights of Robert Perez alleging the additional ground of unfitness by reason of depravity. (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(i).) To support a finding of unfitness based on depravity, it must be established by clear and convincing evidence that the parent committed repetitious acts of sufficient duration to establish a deficiency in a moral sense and either an inability or unwillingness to conform to accepted moral standards. (*In re Sanders* (1979), 77 Ill. App. 3d 78, 395 N.E.2d 1228.) The mere fact that a parent has been convicted of a felony, even a number of felonies, is not sufficient to establish depravity which would render a parent unfit to have the child sought to be adopted. (77 Ill. App. 3d 78, 395 N.E.2d 1228. But see *In re Abdullah* (1981), 85 Ill. 2d 300, 423 N.E.2d 915 (facts underlying murder conviction of father sufficient to prove depravity).) A parent's criminal record is only one factor to be considered, and the statutory ground of depravity requires the trier of fact to closely scrutinize the character and credibility of the parent. (*In re Sanders* (1979), 77 Ill. App. 3d 78, 395 N.E.2d 1228.) On such a determination, a reviewing court is inclined to give deference to the decision of the trier of fact. 77 Ill. App. 3d 78, 395 N.E.2d 1228.

 In the instant case, the record clearly establishes a high level of concern and interest in the minors on the part of Robert Perez. He repeatedly and consistently kept in contact with the DCFS since 1982, when the children were first removed and shortly after which he was incarcerated. Although incarcerated, he petitioned on his own for appointment of counsel and succeeded through numerous petitions to the court in obtaining visitation with his children throughout his incarceration. The caseworkers, Helen Twedt and Jan McPhillips, testified for the State that Robert Perez' incarceration was an impediment to his taking responsible care of his children. Robert Perez testified that he was convicted of attempted robbery in New York State in 1965. He pled guilty to driving under the influence in Los Angeles in 1972. He

pled guilty to the offense of burglary in 1982 and forgery in 1985. At the time of the hearing, he was incarcerated on the last offense. The trial court in refusing to find Robert Perez unfit by reason of depravity stated that the State failed to meet its burden of proof by clear and convincing evidence.

The State cites two cases in support of its argument that the finding of the trial court was against the manifest weight of the evidence. (*In re M.B.C.* (1984), 125 Ill. App. 3d 512, 466 N.E.2d 273; *In re Abdullah* (1981), 85 Ill. 2d 300, 423 N.E.2d 915.) Those cases involved findings of depravity based on the criminal acts of the parent. However, both cases are distinguishable on their facts.

In *M.B.C.*, the respondent had been convicted of two rapes, robbery, deviate sexual assault and intimidation and was currently serving a sentence of 60 years for several of his crimes which he committed in 1977 after serving 20 years in prison for his convictions of rape and robbery in the early 1950's. (*In re M.B.C.* (1984), 125 Ill. App. 3d 512, 516, 466 N.E.2d 273, 276.) In *Abdullah*, the supreme court distinguished *Sanders* and held that evidence of a conviction for murder of the minor's mother, which led to an extended-term sentence, was sufficient to prove depravity. We are not persuaded by the State's authority or argument that the trial court erred. Accordingly, we affirm the findings of the trial court as to Robert Perez. See *In re Sanders* (1979), 77 Ill. App. 3d 78, 395 N.E.2d 1228 (fact of convictions for burglary, resisting police officer, aggravated battery, deceptive practices, and criminal damage to property did not require reversal of trial court's finding that State failed to prove depravity).

As to the appeal denominated No. 2—87—0192, the judgment of the circuit court of Kane County is reversed and the cause remanded. As to the appeal denominated No. 2—87—0204, the judgment of the circuit court of Kane County is affirmed.

No. 2—87—0192, Reversed and remanded.
No. 2—87—0204, Affirmed.

INGLIS and WOODWARD, JJ., concur.