*In re* MICHELLE ANNE BOOLMAN, a Minor (The People of the State of Illinois, Petitioner-Appellee, v. William J. Boolman *et al.*, Respondents-Appellants).

Fourth District   No. 4—85—0419

Opinion filed January 31, 1986.

Alan J. Novick, of Bloomington, for appellants.

Ronald C. Dozier, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Elizabeth A. Robb, of Bloomington, guardian *ad litem*.

JUSTICE GREEN delivered the opinion of the court:

On September 27, 1983, Michelle Anne Boolman was adjudged by the circuit court of McLean County to be a neglected child because of sexual abuse. She was made a ward of the court and taken from the custody of her parents, William and Patricia Boolman. On appeal, this court affirmed. (*In re Boolman* (1984), 126 Ill. App. 3d 1160 (Rule 23 order).) On February 25, 1985, the State filed a supplemental petition alleging that the minor's parents were "unfit" by the terms of section 1 of "An Act in relation to the adoption of persons ***" (Ill. Rev. Stat. 1983, ch. 40, par. 1501) and requesting that their parental rights should be terminated and a guardian appointed with power to consent to the adoption of the minor. The parents filed a responsive pleading and a motion for summary judgment. After a hearing on May 21,

1985, the court denied summary judgment and found in favor of the State on the petition, declaring the parents to be unfit and appointing the requested guardian. The parents appeal. We affirm.

At the time of the entry of the decree of neglect, the court had found that the father had sexually abused the minor and the mother had not taken adequate steps to protect the minor. The supplemental petition filed February 25, 1985, alleged that the parents failed to make "reasonable progress" toward the return of their minor child, Michelle, to their home in that: (1) Despite the stated goal that respondents would attend counseling and work on the issue of sexual abuse, both respondents failed to consistently attend such counseling and to work toward resolving those issues; (2) respondents continued to deny any wrongdoing and persisted in their opinion that there was no need or value in counseling; and (3) due to respondents' hostility toward counseling, they were no closer to having the minor returned to their home than they were at the time of the entry of the decree of neglect. At the May 21, 1985, hearing, the court found the allegations to have been proved.

On appeal, the parents contend that the trial court erred both in finding for the State on the supplemental petition and in denying their motion for summary judgment.

Respondents argue that the trial court improperly terminated their parental rights, because their failure to make "reasonable progress" toward the return of the minor child to their home was the result of ineffectual attempts at counseling. Respondents maintain that the Illinois Department of Children and Family Services (DCFS) had the statutory duty to:

> "[D]evelop a case plan designed to stabilize the family situation and prevent placement of a child outside the home of the family, reunify the family if temporary placement is necessary, or move the child toward the most permanent living arrangement and permanent legal status." (Ill. Rev. Stat. 1983, ch. 23, par. 5006a.)

Respondents contend that the services provided by DCFS did not and could not ever have fulfilled those statutory goals.

Thomas Barr, a therapist appointed by DCFS to counsel respondents, testified at the May 21 hearing that he met with respondents on three occasions, and at each meeting, respondents denied the charges of sexual abuse. Barr said that, until respondents acknowledged what had happened and why it had happened, they would be unable to learn to cope with their problems. He testified that, finally, respondents indicated they had no interest in obtaining counseling. Barr said

that he and his supervisor then met and determined that, because of respondents' lack of motivation and denial of any problem, respondents would not benefit from counseling, and it should be discontinued.

Barr further testified that despite the determination reached by him with his supervisors, he met again with the parents and they continued to deny that the father had abused the child. Barr explained that the parents presented what purported to be a letter from an older daughter saying she had lied about her father's conduct at the hearing on the neglect petition. Apparently, the parents requested that counseling be discontinued until they had an opportunity to present the testimony of the daughter. No further meetings between Barr and the parents were held.

On cross-examination, Barr admitted there were other therapeutic techniques he could have used in counseling respondents, but for various reasons, he felt the other methods were not appropriate or would not be useful in this case.

Phil Foster, a DCFS caseworker assigned to respondents' case since its initiation, testified that he assisted in preparing a client service plan to develop the goals respondents should attain to regain custody of Michelle. He said the plan had been reduced to writing and Mrs. Boolman and her attorney participated in the review. Foster testified that respondents denied any sexual abuse had occurred and questioned the need for counseling. He said, however, the respondents never objected to Barr as a counselor, and they did not request a change in counselors. Foster admitted there were other counseling techniques he could have suggested that Barr use, but he did not make such recommendations here. He concluded that, without an admission by respondents that the abuse had occurred, there would be no reason to believe it would not recur, and he could not recommend the return of Michelle to her parents' custody.

■■ The court found respondents to be "unfit" because of their failure "to make reasonable efforts to correct the conditions which were the basis for the removal of the child" or "to make reasonable progress toward the return of the child" within 12 months after the adjudication of neglect. (Ill. Rev. Stat. 1983, ch. 40, par. 1501(D)(m).) A finding of unfitness as the basis for termination of parental rights must be supported by clear and convincing evidence (*In re Ybarra* (1975), 29 Ill. App. 3d 725, 331 N.E.2d 224), but will not be disturbed by the reviewing court unless against the manifest weight of the evidence. *In re Ice* (1976), 35 Ill. App. 3d 783, 342N.E.2d 460.

■ In order for respondents to make "reasonable progress" toward the return of a child, they must make a minimum measurable or

demonstrable movement toward that goal. (*In re Austin* (1978), 61 Ill. App. 3d 344, 350, 378 N.E.2d 538, 542.) Here, although the parents had visited the child, their refusal to face their shortcomings was a sufficient basis for the trial court to conclude that they had not made "reasonable progress" toward the return of the child.

■ The parents' contention that they should have been granted summary judgment is based on their filing of an affidavit that the minor had not been abused and they had cooperated with their counselors and the lack of any counteraffidavit by the State. However, the State did not need to file a counteraffidavit. The parents were collaterally estopped to deny the previous determination of the existence of abuse made in the decree of neglect. The case of *In re Harpman* (1985), 134 Ill. App. 3d 393, 480 N.E.2d 873, cited by the parents, did not involve a situation where the party denying abuse was collaterally estopped from doing so. The case is inapposite. The parents' contentions concerning cooperation were disputed by the allegations of the verified pending petition.

Accordingly, the decision of the trial court is affirmed.

Affirmed.

WEBBER and SPITZ, JJ., concur.