*In re* S.D., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Earl H. Dillman, Respondent-Appellant).

Fourth District   No. 4—90—0599

Opinion filed May 9, 1991.

Lynne R. Feldman, of Kirtley-Pavia-Marsh, P.C., of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Harvey Welch, of Urbana, guardian *ad litem.*

JUSTICE McCULLOUGH delivered the opinion of the court:

The parental rights of respondent Earl H. Dillman to S.D. were terminated by the trial court on July 24, 1990, after a finding that respondent failed to (1) make reasonable efforts and progress toward the return of S.D. to his care; and (2) demonstrate a reasonable degree of interest, concern, or responsibility for S.D.'s welfare. (Ill. Rev. Stat. 1989, ch. 40, pars. 1501(D)(m), (D)(b).) S.D.'s mother, Katherine Overstreet, surrendered her parental rights to S.D. on July 9, 1990. Respondent appeals from the termination order and raises the following issues for our consideration: (1) whether respondent was denied effective assistance of counsel at the hearing on March 21, 1989, adjudicating S.D. an abused minor by reason of sexual abuse by respondent; and (2) whether the finding of unfitness and termination of respondent's parental rights is against the manifest weight of the evidence. We affirm.

In light of the issues presented, a full recitation of the facts and history of this case is necessary.

On December 12, 1988, a two-count petition was filed alleging S.D., a four-year-old girl, was neglected due to an injurious environment when she resided with respondent and abused due to sexual abuse committed by respondent. Count I was dismissed after the adjudicatory hearing. Count II alleged respondent fondled S.D. and engaged in sexual intercourse with her. S.D. was taken into shelter care on December 12, 1988.

At the adjudicatory hearing on March 21, 1989, S.D. testified in the judge's chambers using anatomically correct dolls and described how respondent "hopped on" her, inserted his penis ("peepee") into her vagina ("peepee"), moved back and forth and made faces at her. S.D. also reported she told respondent to "get off" of her because he was too heavy. S.D. stated she had seen respondent "pee" before and the "pee" was white. Jeanne Rice, a social worker for the Department of Children and Family Services (DCFS), testified that S.D.

lived alone with respondent and respondent had five older children by a previous marriage. Respondent was divorced from S.D.'s mother. Rice interviewed S.D. on December 11, 1988, and reported S.D. told her of the sexual abuse by respondent. S.D.'s statements at the interview with Rice were consistent with her court testimony. S.D. told Rice the sexual acts took place "a lot of times" and before the respondent's older children came to visit respondent on the weekends.

Sandra Potzer, a child-protection investigator for DCFS, testified that when she interviewed respondent on December 12, 1988, he denied the sexual abuse and stated someone was making S.D. say those things. Potzer interviewed S.D. on December 12, 1988, and S.D. again reported that respondent had engaged in sexual acts with her. When S.D. used anatomically correct dolls to demonstrate to Potzer what occurred, she chose a female child doll and an adult male doll to demonstrate the sexual acts.

Respondent, represented by counsel, did not present any evidence at the adjudicatory hearing.

The trial court found S.D.'s testimony credible and corroborated by the testimony of the DCFS workers. Further, given the graphically detailed nature of S.D.'s statements reported to many different persons, the trial judge reasoned it was unlikely S.D. was reporting sexual acts she saw on TV. The trial judge also noted S.D.'s apparent affection for and closeness to respondent made it unlikely S.D. was fabricating the events. The trial judge found S.D. had been sexually abused by respondent.

At the dispositional hearing on April 24, 1989, S.D. was removed from respondent's care and made a ward of the court. Respondent was ordered, *inter alia*, to cooperate fully with any course of therapy or counseling recommended by DCFS. Respondent was advised of his right to appeal the findings of sexual abuse and removal of S.D. from his care. Respondent filed a notice of appeal on May 24, 1989. Respondent's appeal was dismissed by this court on September 20, 1989, for failure to file the record on appeal as required by Supreme Court Rule 326 (134 Ill. 2d R. 326). *In re S.D.* (4th Dist. Sept. 20, 1989), 4—89—0453 (order of dismissal).

Review hearings were held on October 23, 1989, and April 2, 1990. At the October 1989 hearing, the court admonished respondent about his inconsistency in visiting S.D. and his failure to continue regular counseling to address the sexual abuse problems. Respondent continued to deny the abuse occurred and viewed himself as a victim of life's circumstances. A review report prepared by DCFS indicated S.D. continued to have problems dealing with the past sexual abuse

by respondent and she maintained her version of events of the abuse. At the hearing on April 2, 1990, the court considered a DCFS review report which reflected respondent continued to deny the sexual abuse and had no stable home or job. The court directed all prior orders were to remain in effect.

A supplemental petition seeking termination of respondent and Katherine Overstreet's parental rights to S.D. was filed on April 2, 1990. In pertinent part, the petition alleged respondent failed to (1) maintain a reasonable degree of interest, concern, or responsibility for S.D.; (2) make reasonable efforts to correct the conditions which led to the removal of S.D.; and (3) make reasonable progress toward the return of S.D. to his care.

At a hearing on June 27, 1990, Ronald Matthew, a clinical psychologist, testified he conducted a psychological evaluation of respondent in February 1989 and concluded respondent is a passive-aggressive person who presents himself to others in the best possible light and avoids unacceptable feelings. Respondent is concerned about how others perceive him and needs and seeks the attention, approval, and affection of others. Also, respondent is a dependent person who is insecure with women. Matthew stated respondent never admitted to sexually abusing S.D. Matthew opined counseling would help a person who has sexually abused a child and admitting the act is an important component of any successful counseling. Matthew stated where a sexual abuser does not admit the past abuse, there is a risk the abuse will reoccur. Matthew stated respondent exhibits appropriate parenting skills but this is not inconsistent with being a sexual abuser of a child.

On cross-examination, Matthew stated he did not recommend group-oriented counseling for respondent with other perpetrators of sexual abuse because, based on his February 1989 evaluation of S.D., he did not find any psychologically confirming evidence of sexual abuse. On redirect, Matthew reiterated his evaluation of respondent was completed *before* the adjudicatory hearing in March 1989 when S.D. testified in court regarding the sexual abuse.

Gary Laumann, a marriage and family therapist, testified he counseled respondent from May to August 1989. The counseling sessions began as weekly visits but after mid-June 1989, respondent did not contact Laumann or cancelled scheduled sessions. During this period, respondent refused to admit he sexually abused S.D. and told Laumann he thought he was being framed by his ex-stepdaughter and ex-mother-in-law. Laumann reported respondent repeatedly saw himself as a victim in his relationships with women and in his jobs. Be-

tween August 1989 and November 27, 1989, Laumann had no counseling sessions with respondent because respondent did not schedule any sessions as he was required to. During two sessions in February 1990, Laumann confronted respondent with sexual abuse charges by reading the transcript of S.D.'s court testimony to him. After reading the transcript of the first session, respondent stated, "Well, it's sad to hear that." At the second session, respondent vehemently denied the sexual abuse occurred. Thereafter, respondent continued to deny the sexual abuse occurred. Laumann opined further counseling would not change respondent's perspective on the sexual abuse issue.

On cross-examination, Laumann indicated respondent's denial of sexual abuse was very strong. He stated it was possible respondent did not even remember the incidents of abuse. Laumann stated respondent could benefit from group therapy or hypnosis in regard to admitting the sexual abuse.

Marjorie Marlott, a child-welfare specialist for DCFS, became involved with respondent and S.D. in March 1989 when she was a caseworker for Catholic Social Services. Marlott stated respondent refused to admit he sexually abused S.D. Marlott stated respondent was not consistent from March 1989 to September 1989 in keeping appointments with her and his housing and job situation was not stable throughout the period. Further, respondent did not consistently maintain weekly visits with S.D.

Tim Lappin, a social worker for DCFS, testified he began working on respondent's case in December 1989. Lappin worked on the March 1990 administrative case review of respondent. Lappin recalled that at the administrative case review on March 15, 1990, respondent denied that he sexually abused S.D. Respondent told Lappin that if he admitted the abuse, he would be calling his older children, who consistently reported that respondent "would not do such a thing," liars. Lappin stated respondent was not employed in March 1990.

Carla Dumas, a caseworker for the foster care division of Catholic Social Services, testified she began working with respondent in February 1990. Dumas also reported respondent had not admitted to sexually abusing S.D. Dumas reported respondent exhibits adequate parenting skills in his visits with S.D. and he completed successfully a parenting class.

Respondent testified he found a residence which he shares with his mother and sister. Respondent stated he had not admitted sexually abusing S.D. because "I cannot admit to something I do not remember doing." On cross-examination, respondent stated he did not abuse S.D.

The trial court found respondent unfit for failing to make reasonable efforts to correct the conditions which led to a finding of abuse, for failing to make reasonable progress toward the return of S.D. to his care, and for lacking a reasonable degree of interest, concern, or responsibility for S.D. At the dispositional hearing on the supplemental petition, respondent's parental rights to S.D. were terminated.

Respondent's first contention is that his trial counsel was ineffective for not interviewing and presenting witnesses favorable to him at the adjudicatory hearing in March 1989. Specifically, respondent maintains Dr. Buetow, a pediatrician who interviewed S.D. in December 1988, should have been called because her conclusions after interviewing S.D. and respondent's older children supported his claim that he did not sexually abuse S.D. Respondent points to Dr. Buetow's report, wherein she indicated S.D. was prone to fantasy, and to notes of a DCFS caseworker who reported Buetow believed the respondent's older children who stated nothing happened between S.D. and respondent. Respondent argues the older children should have been called to testify in his behalf, as well as Dr. Matthew, who also concluded in March 1989 that S.D. probably was not molested by respondent.

The State argues respondent is barred from raising this issue because it should have been raised in an appeal within 30 days of the April 1989 dispositional order. Since the first appeal in this case was dismissed, respondent is barred from raising the issue in this appeal. We agree with the State.

■ As noted, respondent appealed the removal of S.D. from his custody because of sexual abuse in May 1989. That appeal was dismissed because respondent did not file the record in this court. Supreme Court Rule 326 authorizes the reviewing court to dismiss an appeal where the record on appeal has not been filed as required by the rule. In *In re Tucker* (1976), 45 Ill. App. 3d 728, 359 N.E.2d 1067, the court concluded a claim of error which occurred in the initial delinquency proceedings could not be raised in an appeal involving the proceedings for revocation of the delinquent's probation where the minor did not earlier appeal the order of probation entered on the adjudication of delinquency. (See also *In re Brown* (1977), 48 Ill. App. 3d 171, 367 N.E.2d 707 (appellate court may not consider error in initial delinquency proceedings in appeal concerning sentence entered on revocation of probation); *In re Marriage of Betts* (1989), 190 Ill. App. 3d 961, 547 N.E.2d 686 (order of dismissal on first appeal bars litigant from raising issues involved in first appeal in later appeal).) Supreme Court Rule 369(b) provides that where an appeal is dismissed,

other proceedings may be conducted as if no appeal had been taken. (134 Ill. 2d R. 369(b).) We conclude the dismissal of respondent's earlier appeal precludes this court from considering any issue regarding the initial proceedings in this case. Parenthetically, we believe the presentation of those witnesses respondent relies on would not have changed the trial court's finding that respondent sexually abused S.D.

Respondent next argues the finding that he is an unfit parent and the termination of his parental rights are against the manifest weight of the evidence. We disagree.

■ A finding of parental unfitness must be supported by clear and convincing evidence. (*In re Paul* (1984), 101 Ill. 2d 345, 461 N.E.2d 983.) Parental rights and responsibilities are of deep human importance and will not be lightly terminated. (*In re R.B.W.* (1989), 192 Ill. App. 3d 477, 548 N.E.2d 1085.) A finding of unfitness will not be disturbed by the reviewing court unless it is against the manifest weight of the evidence. (*In re Boolman* (1986), 141 Ill. App. 3d 508, 511, 491 N.E.2d 1, 3.) The rationale underlying the standard is the trial court's opportunity to view and evaluate the parties and their testimony is superior to that of the reviewing court. Accordingly, the trial court's finding should be given great deference. *In re Brown* (1981), 86 Ill. 2d 147, 152, 427 N.E.2d 84, 87.

■ The trial court found respondent unfit for failing to make reasonable efforts to correct the conditions which were a basis for removal of S.D., or to make reasonable progress toward the return of S.D. to his care within 12 months of the adjudication of abuse (Ill. Rev. Stat. 1989, ch. 40, par. 1501(D)(m)), and for failing to demonstrate a reasonable degree of interest, concern, or responsibility for S.D. (Ill. Rev. Stat. 1989, ch. 40, par. 1501(D)(b)). Reasonable progress is an objective determination and requires a parent to make at a minimum, measurable or demonstrable movement toward the return of a child. (*In re Austin* (1978), 61 Ill. App. 3d 344, 350, 378 N.E.2d 538, 542.) The benchmark for determining reasonable progress is the situation which triggered the child's initial removal. (*In re Bennett* (1980), 80 Ill. App. 3d 207, 212, 399 N.E.2d 735, 738.) Reasonable effort is a subjective judgment based upon the amount of effort which is reasonable for a particular person. *In re Doolan* (1981), 101 Ill. App. 3d 322, 324, 427 N.E.2d 1348, 1349.

■ The evidence established respondent completed some of the goals established in the DCFS client-service plans but adamantly refused to admit to sexually abusing S.D. Whether or not S.D. was sexually abused was not an issue in the proceedings on the supplemental petition and is not an issue before this court. The counsellors

involved in this case established respondent's acknowledgement of the abuse was critical to the full recovery for S.D. from the trauma she suffered from the abuse and was required before respondent would be reunited with S.D. Further, failure to admit the abuse could lead to additional incidents of sexual abuse if respondent and S.D. were reunited. Regardless of respondent's persistence of denial, in determining whether respondent was an unfit parent, the trial judge weighed the credibility of the witnesses and considered all of the evidence, including respondent's refusal to acknowledge the abuse. The trial judge commented as follows in the last hearing:

"I had the benefit of sitting and watching and listening to this little girl testify. I remember as she re-enacted her own abuse with the anatomically correct dolls sometimes referred to as sexual abuse dolls. I remember as she described it verbally and I remember the look on her face. I remember her emotional reaction and that child wasn't lying. I don't believe Doctor Matthew ever had the benefit of sitting there and watching this child re-enact her own sexual abuse. *** I, frankly, find nothing to suggest that it would be in the best interests of this six year old little girl to condemn her to reside with the man who has sexually abused her, who denies it; who has rejected and refused all help, and all attempts to help and to condemn that child to live with a family that doesn't believe her. I, frankly, am unmoved by sympathy here, and, unlike the State, I would question the love of an adult father who would do this to a child in the first instance, and then would reject all efforts to help him correct the problem, deal with it, and, more importantly, help this child to complete her emotional recovery from the sexual abuse. I seriously wonder if she will ever be able to fully recover without acknowledgement by the man who abused her that, in fact, it was done; that it was his fault, it was not her fault. *** [T]his case causes me less pause than most others, and I have no doubt as to what is in [S.D.]'s best interests, and that is to grant the prayer of the petition and terminate parental rights."

We conclude the trial court's order finding respondent an unfit parent in terminating his parental rights was supported by the evidence.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

LUND, P.J., and SPITZ, J., concur.